**FARAH MANUFACTURING COMPANY, INC.,**
Appellant,

v.

**Jose Luis Lerma ALVARADO, Appellee.**

No. 08–87–00268–CV.

Court of Appeals of Texas, El Paso.

Dec. 28, 1988.
Rehearing Denied Feb. 1, 1989.

Crawford S. Kerr, Jr., Edwards, Belk, Hunter & Kerr, El Paso, Marc S. Culp, Sheehan, Young, Smith & Culp, Tom Thomas, Kolodey & Thomas, Dallas, for appellant.

Evelina Ortega, Caballero & Panetta, El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and FULLER, JJ.

## OPINION

SCHULTE, Justice.

Appellee, Jose Luis Lerma Alvarado, brought an action against his former employer/Appellant, Farah Manufacturing Company, Inc. (FMC), for wrongful discharge under Tex.Rev.Civ.Stat., Art. 8307c (Vernon Supp.1989). The case was tried to a jury, and the jury awarded Appellee $138,080.00 in actual damages and $1,000,-000.00 in punitive damages. We reverse and remand for a new trial.

Appellee worked for Appellant as a "presser." In 1984, he began to experience health problems. His right leg began to swell and he was having difficulty breath-

ing. On June 29, 1984, Appellee checked himself into Providence Hospital complaining of chest pains. Upon being released from the hospital, he consulted with an attorney and decided to file a claim for worker's compensation. On August 27, 1984, Appellee reported back to work and presented Appellant with two notes from his attending physicians. The note from Dr. Cepeda read in pertinent part:

He is to avoid any occupation that requires standing up for long periods of time; walking and sitting are O.K. as well as loading.

The note from Dr. Ruffier read in pertinent part:

Mr. Lerma has to be active in his work. He can't sit for long periods and he can't stand still for long periods.

Appellee admits that these restrictions prohibited him from performing the job he had been doing prior to his illness. Given this information, Appellant advised Appellee that it did not have any other work for him at that time. Thereafter, Appellee received a letter from Appellant asking whether he would accept the next available job or whether he would prefer to wait for the job he had previously held. He responded by advising Appellant that he would accept any job the company had.

Evidence was presented that Appellant had entered into a collective bargaining agreement covering all production maintenance employees. This agreement was in effect from February 1983 to February 1986 and governed the hiring, firing and other conditions of employment for all employees except guards, supervisors, office personnel and management personnel. Appellee, an employee in production, was subject to all provisions of the agreement.

The agreement provided that an employee, on leave of absence, must return to work within sixty days at the minimum acceptable level of productivity. Appellant, acting in accordance with the agreement, placed Appellee on an excused leave of absence, with the right to return to work at the same job at the minimum acceptable level of productivity within sixty days. The agreement provided also that if the employee should return within sixty days, yet is unable to return to the same job and there are no other jobs available that he is capable of performing, then the employee is placed on "sustained layoff" status.

When employees were laid off, rules in the agreement, regarding "seniority," strictly controlled who should keep his job, who should be laid off, and who should get another job after being laid off. Seniority, generally the length of one's employment, was earned and applied in reference to a particular employee's job classification and plant. During the period of time an employee was on layoff status, his name was to be placed on a seniority list. When a job became available and an employee had indicated that he wished to be recalled, then he would be recalled under one of two conditions: One, if a job became available in his department and he was the most senior person on the layoff list; or two, if a position became available in another job classification and there was no one within that particular department on the layoff list or the person on the layoff list did not want the job. However, if an employee was on layoff status for more than twelve months without being recalled, he lost his seniority and could be terminated.

In the instant suit, twelve months passed without a job becoming available for Appellant and, under the agreement, his seniority and recall rights were terminated. Appellee asserted at trial that employees with less seniority were recalled to other job classifications after being placed on layoff. Appellant's response was that the seniority provisions, coupled with Appellee's medical restrictions, restricted Appellant from providing alternative employment.

On appeal, Appellant asserts that the most serious of the evidentiary errors was that contained in Point of Error No. One involving the trial court's decision to permit an undisclosed rebuttal witness to testify. Appellant argues that Appellee's undisclosed witness, Jacqueline Arrambide, should not have been permitted to testify at trial because Appellee did not supplement his interrogatories at least thirty days prior to trial. Tex.R.Civ.P. 166b(6)

(Vernon Supp.1988). Relevant interrogatory questions and responses were as follows:

1. Please state the name, address, telephone number, and employer *of all persons having knowledge of the occurrences made the basis of this suit.* Plaintiff, Naomi Perez, 240 McCarthy, El Paso, Texas 79915. Gary Dow, Terry Martinez, Joe Harlow [sic], Farah Manufacturing, 8889 Gateway West, El Paso, Texas 79925, 593–4444.

2. Please state the name, address, telephone number, and employer *of each potential witness that you may use in the trial of this case.*
Same as # 1. (Emphasis added).

The Texas Supreme Court has repeatedly held that if the identity and location of a person with knowledge is not disclosed, on proper request, the person may not testify at the time of trial. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243, 247 (Tex. 1985). This common-law rule has been codified into Tex.R.Civ.P. 215(5) (Vernon Supp.1988). Under Rule 215(5), the sanction is automatic in the absence of a "good cause" reason explaining why the testimony should be admitted. The determination of good cause is a decision relegated to the discretion of the trial judge. *Morrow v. H.E.B., Inc.,* 714 S.W.2d at 298. That determination can be set aside only if that discretion is abused. *Id.* In determining whether there was an abuse of discretion, this Court must ascertain whether the trial court acted without reference to any guiding rules and principles. *Id.* The party offering the evidence has the burden of showing good cause to the trial court. *Id.* In the instant suit, there were two lengthy arguments presented to the trial court in an attempt to show good cause.

At the pretrial hearing, Appellee's primary argument to gain admission of Arrambide's testimony was that rebuttal witnesses need not be disclosed in interrogatory answers; thus, the good cause standard was inapplicable. Yet, neither Rule 166b(6) nor 215(5) excludes rebuttal witnesses from disclosure or sanction. *Walsh v. Mullane,* 725 S.W.2d 263, 264–265 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Although in some instances it may be impossible for a party to know in advance who has knowledge of facts relevant to rebut his opponent's evidence, no such claim can be made here. During argument at the pretrial hearing, Appellee urged that Arrambide's testimony would enhance the prospects for recovery as well as exemplary damages. Appellee had sought the recovery of exemplary damages from his very first pleading. Clearly, the issue did not arise from unanticipated developments at trial.

In addition, at the pretrial hearing, Appellee advocated for the admission of Arrambide's testimony in order to prove that Appellant had in the past violated Article 8307c. At the time, Arrambide was a plaintiff in a similar lawsuit against Appellant. Through Arrambide's testimony, Appellee intended to provide proof of other similar conduct under similar circumstances. Thus, the issues giving rise to Arrambide's testimony did not arise from unanticipated developments at trial. Rather, *prior to trial,* Arrambide was both a "potential witness" and a person "having knowledge of the occurrences made the basis of this suit." This is further evidenced by the fact that Appellee had Arrambide subpoenaed prior to trial.

■ Appellee's second attempt at showing good cause occurred during trial. At trial, Appellee called Arrambide to testify. Appellant again objected on the grounds that Arrambide was an undisclosed witness. In response, counsel for Appellee claimed surprise as to portions of the testimony of Mark Ross, personnel director for Appellant. Ross had testified during his deposition that Appellant would not reemploy an employee who had been hurt on the job if said employee had any limitations upon returning to work; further, that any limitations placed on an employee would prevent him from being recalled to work. Appellee claimed surprise to Ross's testimony at trial allegedly to the effect that work related injuries or claims concerning

work related injuries are not held against non-bargaining unit employees. Yet, counsel for Appellee acknowledged that such testimony was not contrary to any statement in Ross's deposition. Ross, in his deposition, was never asked questions dealing specifically with non-bargaining unit employees. Surprise arising from the failure to adequately pursue information in a deposition is insufficient to permit the testimony of an undisclosed witness. See e.g. *Nix v. H.R. Management Company,* 733 S.W.2d 573 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.).

■ In addition, the trial court's decision to admit Arrambide's testimony may have been influenced by the fact that Arrambide was a plaintiff in a similar lawsuit against Appellant. The fact that Appellant's counsel was also representing Appellant in Arrambide's case and had fully deposed Arrambide was brought to the trial court's attention. Yet, neither should have influenced the court's decision. First, given the fact that Appellant denied any wrongdoing throughout pretrial and presented evidence to such effect, it is impossible to accept that Appellee's alleged surprise is genuine. Appellee was well aware that as part of Appellant's response, there would be testimony to the effect that if a physical limitation was placed on an employee, (resulting from a work-related injury), this would not automatically prevent that employee from being reemployed. Arrambide's testimony, on the other hand, focused on her termination from a job, which she alleges she could still medically perform, within one week of filing her worker's compensation claim. Clearly, Arrambide's name should have been disclosed in response to interrogatories irrespective of the alleged inconsistent testimony from Mark Ross.

■ Second, the fact that Arrambide's deposition was taken in another case does not support the admission of her testimony. Appellant's lack of surprise is irrelevant when attempting to make a showing of good cause. See *Liberty Mutual Fire Insurance Company v. Gee,* 749 S.W.2d 883, 885 (Tex.App.—Texarkana 1988, no writ). The rule allows a "good cause" exception, but the burden rests on the offering party to make a positive showing of good cause. *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243 (Tex. 1985); *Walsh v. Mullane,* 725 S.W.2d 263, 264–65 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). While lack of surprise may show there is no good cause to exclude the testimony, that is not the test. It is incumbent upon the party offering the testimony to affirmatively show good cause to include the testimony. *Morrow v. H.E.B., Inc.,* 714 S.W.2d at 298.

It appears the trial court was not acting in conformity with "guiding rules and principles" when it allowed Arrambide's testimony, "in the interest of justice in getting everything on the table." The only way that Appellee should have been permitted to call Arrambide as a witness was if he had established that disclosure of Arrambide's name was not appropriate until the occurrence of unexpected developments at trial. Appellee failed to meet this burden and, consequently, the trial court erred in permitting the testimony.

■ We next examine whether the error was harmful and, therefore, reversible under Tex.R.App.P. 81(b)(1). We must determine whether the error complained of amounted to such a denial of the rights of the Appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. Tex. R.App.P. 81(b)(1); *First Employees Insurance Company v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983). A review of the record reflects that prior to Arrambide's testimony, Appellee's case, focused mainly on the circumstances surrounding Appellee's alleged termination as well as the procedures to be followed by Appellant under such circumstances. In response, Appellant presented evidence attempting to show that it complied with the collective bargaining agreement and that all its actions were legally mandated by it. There was no direct proof that the filing of the worker's compensation claim was a determining factor in Appellant's decision to take the alleged wrongful conduct.

■ In rebuttal, however, Arrambide was allowed to testify that she was a non-union employee who was terminated (allegedly), from employment on a job she could still medically perform within one week of filing her worker's compensation claim. No other evidence of a similar occurrence was presented, except Arrambide's testimony. Moreover, Arrambide was an undisclosed witness who testified on the most controverted issue in the case. Admission of such non-cumulative evidence from an unpaid witness who was unrelated to the plaintiff can seldom be viewed as harmless error. See e.g. *Nix v. H.R. Management Company*, 733 S.W.2d 573 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.); *Williams v. Union Carbide Corporation*, 734 S.W. 2d 699 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Brewer v. Isom*, 704 S.W. 2d 911, 912 (Tex.App.—Dallas 1986, no writ).

■ The trial court ignored the "good cause" burden of proof for the admission of Arrambide's testimony, and instead allowed the testimony, "in the interest of justice in getting everything on the table...." This is not the affirmative finding of "good cause" required under Rule 215(5), and was error, and we believe harmful and reversible. See *Braniff, Inc. v. Lentz*, 748 S.W.2d 297 (Tex.App.—Fort Worth 1988, no writ). Point one is sustained.

In view of the remand, we will additionally comment on what we also consider as error contained in point number two.

■ In Point of Error No. Two, Appellant urges that the trial court erred in permitting Appellee to introduce evidence over Appellant's objection that a board member of Appellant corporation had received a substantial judgment. Appellant argues that the evidence was not material and was highly prejudicial and, as a result, such error was harmful.

At trial, Appellee sought to introduce into evidence testimony concerning a claim that William Farah had been wrongfully ousted from his position with the company and had sought millions of dollars in a suit. In addition, Appellee sought and was permitted to offer testimony that William Farah had personally obtained a judgment in an amount between $10,000,000.00 and $14,000,000.00.

When Appellee initially sought to introduce this evidence, Appellant objected on the basis that the evidence was "not relevant to anything at all." Thereafter, a discussion was held at the bench where Appellee contended that the evidence was relevant to show how William Farah had asserted his rights when he thought his job had been wrongfully taken away from him. In addition, Appellee contended that the evidence would be admissible with regard to the issue of punitive damages:

> It's an issue of punitive damages. It's a question of how wealthy this Defendant is, what will cause this Defendant to stop doing what they have been doing....

In response, Appellant argued that such evidence was irrelevant and immaterial, and that this prior suit had no bearing on the instant suit whatsoever. After considerable discussion, the trial court decided that it was going to admit the evidence on the basis of the punitive damage issue. Appellant then asked the court to note their exception and also made the following objection:

> MR. KERR: I want my objection to go with the one that this evidence is irrelevant, immaterial for any purpose, and extremely prejudicial. And what Mr. Willie Farah did has nothing to do with Farah Manufacturing Company, and that punitive damages are not recoverable in a wrongful discharge case.

At this point, it should be noted that Appellee was incorrect in his assertion at trial that Mr. William Farah had received a judgment. Rather, the judgment was in favor of Appellant corporation. Regardless, permitting evidence of a judgment obtained by a board member of Appellant was error.

The Texas Supreme Court recently held that a civil defendant's net worth was discoverable and admissible in evidence when punitive or exemplary damages are properly in issue. *Lunsford v. Morris*, 746 S.W.

2d 471 (Tex.1988). The reason for permitting evidence of a defendant's net worth is to provide the jury with a rational guide for determining the amount of punitive damages necessary to deter similar wrongful conduct in the future. *Id.* However, evidence of a judgment received by a board member of Appellant does not fall within the parameters of the *Lunsford* rationale. Nor is such evidence appropriate absent an instruction limiting such evidence solely to a showing of a defendant's net worth as it relates to punitive damages, assuming a party has its facts correct in the first place. Under the garbled purported facts presented, Appellee could not correctly, nor did it attempt to proffer, such a limiting instruction. The consequence of permitting evidence concerning Mr. Farah's financial situation was to mislead the jury into believing that the amount of punitive damages should be assessed upon the financial ability of a person not obligated to pay any award in the suit before the jury. Point two is sustained.

We are of the opinion that under Tex.R. App.P. 81(b), the error discussed under point one, as well as under point two, amounted to such a denial of the rights of Appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment. Those points having been sustained, the judgment is reversed and the cause remanded to the trial court for a new trial. Consideration of the remaining points are not necessary for a final disposition of this appeal. Tex.R.App. P. 90(a).