Jose Luis Lerma ALVARADO,
Petitioner,

v.

FARAH MANUFACTURING COMPANY,
INC., Respondent.

No. C–8405.

Supreme Court of Texas.

March 11, 1992.

Evelina Ortega, Raymond C. Caballero, El Paso, Prof. J. Patrick Hazel, Austin, for petitioner.

Tom Thomas, Marc Culp, Dallas, Crawford S. Kerr, El Paso, for respondent.

## OPINION ON REHEARING

HECHT, Justice.

Petitioner's motion for rehearing is denied. This opinion is substituted for our prior opinion.

This is yet another case in which a witness who was not identified in response to a discovery request was nevertheless allowed to testify. The trial court apparently found good cause to allow the testimony because the witness was called as a rebuttal witness. The court of appeals held that admission of this testimony was reversible error, and remanded the cause for a new trial. 763 S.W.2d 529. Consistent with many prior opinions of this Court, we agree with the court of appeals and therefore affirm.

### I

While employed by Farah Manufacturing Company, Jose Luis Lerma Alvarado experienced chest pains and was diagnosed as having a pulmonary embolism. Alvarado consulted with an attorney and filed a worker's compensation claim. After receiving medical treatment, Alvarado was released by his physicians to return to work but was restricted from sitting or standing still for long periods of time. This restriction prevented Alvarado from resuming the work he had done before his illness, which required long periods of standing. Farah had other jobs which Alvarado could perform, and he requested reassignment to one of them; but Farah advised him that there were no openings in any of those jobs. In accordance with the collective bargaining agreement which governed Alvarado's employment, Farah placed him on "sustained layoff" status, listing him with other employees in the same status. Whenever a job opening occurred in a particular department, the collective bargaining agreement required that Farah fill the position from the employees on the list, first from those who had worked in that department, by seniority, then from the others on the list, also by seniority. After one year on the list, an employee's seniority and recall rights automatically terminated.

Farah never recalled Alvarado to work, and all his rights under the collective bargaining agreement were eventually terminated. The union did not complain of Alvarado's termination. Nevertheless, Alvarado filed this action for damages against Farah, claiming that Farah had job openings which it should have offered him but did not do so in retaliation for his filing a worker's compensation claim. Thus, Alvarado claims that Farah violated TEX.REV. CIV.STAT.ANN. article 8307c, (Vernon Supp.

1992).[1]  Farah denies that it violated article 8307c and asserts that it never recalled Alvarado to work because it never had an opening for a job that Alvarado was both physically able to do and eligible to take under the seniority system which Farah had to follow.

Shortly after filing suit, Alvarado directed interrogatories to Farah, the first two of which asked:

1.  Please state the name, address, telephone number, and employer of all persons having knowledge of the occurrences made the basis of this suit.

2.  Please state the name, address, telephone number, and employer of each potential witness that you may use in the trial of this case.

Farah responded with interrogatories to Alvarado, the first two of which were identical to those quoted above.  Neither Alvarado nor Farah objected to these interrogatories; both answered them by identifying several persons.

Six days before trial was set to begin, Alvarado subpoenaed two witnesses to testify who had never been identified in answer to Farah's interrogatories.  One of these witnesses,[2] Jacqueline Arrambide, had formerly been employed by Farah in a non-union position.  Like Alvarado, Arrambide had sued Farah claiming that she had been terminated in retaliation for asserting a claim for worker's compensation benefits.  On the first day of trial, before voir dire commenced, Farah moved to exclude the testimony of Arrambide for the reason that she had not been identified in answer to its interrogatories.  The trial court denied Farah's motion.  After Farah rested its case, Alvarado called Arrambide as a witness on rebuttal.  Again Farah objected, and again the trial court overruled the objection.  Arrambide testified that Farah had fired her one week after Farah found out that she had hired an attorney to make a worker's compensation claim for injury to her back.  She testified that the reason she was given for her termination was poor attendance at work, even though she had missed only a few days work for medical treatment.

The jury found that Farah violated article 8307c with respect to Alvarado, and that he should be awarded $139,080 actual damages[3] and $1,000,000 exemplary damages.  The trial court rendered judgment on the verdict.

## II

### A

Rule 215(5) of the Texas Rules of Civil Procedure states:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.  The burden of establishing good cause is upon the party offering the

---

1.  "Art. 8307c.  Protection of claimants from discrimination by employers; remedies; jurisdiction

    "Section 1.  No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

    "Section 2.  A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position.  The burden of proof shall be upon the employee.

"Section 3.  The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act."

2.  The other witness Alvarado subpoenaed was the adjuster for Farah's worker's compensation carrier.  Alvarado also subpoenaed the records custodian for Farah's worker's compensation carrier to produce its file on Alvarado.  Alvarado had never identified these documents in answer to another of Farah's interrogatories.  Alvarado did not call the adjuster to testify.

3.  The jury found damages of $18,200 for past lost wages, $74,880 for future lost wages, $10,000 for past pain and mental anguish, and $36,000 for lost retirement and other benefits.

evidence and good cause must be shown in the record.

To say that this rule has proven to be problematic is perhaps an understatement. On ten occasions in the eight years since the rule was first promulgated in 1984,[4] this Court has written on whether a witness not identified in response to a discovery request should have been allowed to testify. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex.1990) (per curiam); *Rainbo Baking Co. v. Stafford,* 787 S.W.2d 41 (Tex.1990) (per curiam); *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72 (Tex.1989); *Clark v. Trailways, Inc.,* 774 S.W.2d 644 (Tex.1989); *Boothe v. Hausler,* 766 S.W.2d 788 (Tex.1989) (per curiam); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394 (Tex.1989); *E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363 (Tex. 1987) (per curiam); *Gutierrez v. Dallas Indep. Sch. Dist.,* 729 S.W.2d 691 (Tex. 1987); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986) (per curiam); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243 (Tex.1985). In eight of these cases the trial courts admitted testimony which had not been timely identified in response to discovery requests; in none of them did the Court hold that "good cause sufficient to require admission" was shown.

The trial courts in these cases have given various reasons for allowing testimony despite the failure to comply with discovery rules. These reasons seem to share a basic rationale, sometimes expressed and other times implicit, that admitting the testimony allowed a full presentation of the merits of the case. In the present case, for example, the trial court permitted a previously undisclosed witness to testify "in the interest of justice in getting everything on the table, which this court tries to do when possible...." While it is certainly important for the parties in a case to be afforded a full and fair opportunity to present the merits of their contentions, it is not in the interest of justice to apply the rules of procedure unevenly or inconsistently. It is both reasonable and just that a party expect that the rules he has attempted to comply with will be enforced equally against his adversary. To excuse noncompliance without a showing of good cause frustrates that expectation.

▮▮▮▮ The salutary purpose of Rule 215(5) is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. *See Clark,* 774 S.W.2d at 646; *Gee,* 765 S.W.2d at 396; *Gutierrez,* 729 S.W.2d at 693. The rule is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. *See Clark,* 774 S.W.2d at 647 (inability to locate witness despite good faith efforts or inability to anticipate use of witness' testimony at trial might support a finding of good cause). The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause.

---

**4.** Prior to 1984, Rule 215 dealt with a different subject than the present rule, the taking of one's own deposition. The Rule 215 promulgated that year was a new rule, substantively very similar to the present rule. *See* 661–662 S.W.2d (Texas Cases) xxix, lxxii. Part 5 of the 1984 version of Rule 215 stated:

A party who fails to supplement seasonably his response to a request for discovery in accordance with paragraph 5 of Rule 166b shall not be entitled to present evidence which the party was under a duty to provide in a supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter when the information required by Rule 166b concerning the witness has not been disclosed, unless the trial court finds that good cause sufficient to require admission exists. Rule 215 was amended effective January 1, 1988, to clarify its language and to specify that the burden to show good cause for the admission of evidence not disclosed in response to requests for discovery is on the party offering the evidence. *See* 725–726 S.W.2d (Texas Cases) lv. (Further amendments to Rule 215, effective September 1, 1990, 785–786 S.W.2d (Texas Cases) xxxi, lxiii–lxiv, did not change part 5 and do not affect this case.)

We have repeatedly addressed what factors, standing alone, are *not* in themselves good cause. Included among these are inadvertence of counsel, *Sharp,* 784 S.W.2d at 672; *E.F. Hutton,* 741 S.W.2d at 364; lack of surprise, *Sharp,* 784 S.W.2d at 671; *Gee,* 765 S.W.2d at 395 n. 2 (lack of surprise is not the standard, but may be a factor); *Morrow,* 714 S.W.2d at 298; and uniqueness of the excluded evidence, *Clark,* 774 S.W.2d at 646. The reasons in each instance are intuitive. If inadvertence of counsel, by itself, were good cause, the exception would swallow up the rule, for there would be few cases in which counsel would admit to making a deliberate decision not to comply with the discovery rules. Determining whether a party is really surprised by an offer of testimony not formally identified in discovery is difficult. The better prepared counsel is for trial, the more likely he is to have anticipated what evidence may be offered against his client, and the less likely he is to be surprised. It would hardly be right to reward competent counsel's diligent preparation by excusing his opponent from complying with the requirements of the rules. As we explained in *Sharp:*

> A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory. Thus, even the fact that a witness has been fully deposed, and only his or her deposition testimony will be offered at trial, is not enough to show good cause for admitting the evidence when the witness was not identified in response to discovery.

784 S.W.2d at 671. Finally, if good cause could be shown simply by establishing the unique importance of the evidence to the presentation of the case, only unimportant evidence would ever be excluded, and the rule would be pointless.

To relax the good cause standard in Rule 215(5) would impair its purpose. Counsel should not be excused from the requirements of the rule without a strict showing of good cause. The difficulty with the rule lies not so much in the requirement of strict adherence, but in the severity of the sanction it imposes for every breach. The consequences of the rule should not be harsher in any case than the vice the rule seeks to correct. The sole sanction should not be the exclusion of all evidence not properly identified in discovery; rather, as with other failures to comply with discovery, the trial court should have a range of sanctions available to it to enforce the rules without injustice. "The punishment should fit the crime." *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

As written, however, Rule 215(5) prescribes a single sanction for failing to supplement discovery, and we are not free to disregard its plain language. Nor should we revise the rule by opinion. The Legislature has provided that notice be given before rules amendments become effective. Tex.Gov't Code § 22.004. In addition, this Court has structured the rules revision process to encourage advice and comment from the bench and bar, and from the public generally. Any revision in Rule 215(5) should be left to those processes, which are underway. Last year the Court appointed task forces to study the conduct of discovery and the imposition of sanctions, and to make recommendations for revisions in the rules. The Court's Rules Advisory Committee, the State Bar's Committee on the Administration of Justice, and other groups have undertaken similar studies. While those processes are at work, we adhere to the language of the rule and our consistent precedent.

■ We note, however, that the trial courts are not without power to prevent the enforcement of Rule 215(5) from operating as an injustice in a particular case. When a party has failed to timely identify evidence in response to discovery requests, the trial court has the discretion to postpone the trial and, under Rule 215(3), to impose an appropriate sanction upon the offending party for abuse of the discovery process. Such sanction may be used to compensate the non-offending party for any wasted expense in preparing for trial. Although the trial court should not allow delay to prejudice the non-offending party,

the trial court should ordinarily be able to cure any prejudice by a just imposition of sanctions.[5]

**B**

In the instant case each party inquired of the other the identity of all potential witnesses. Although they might both have successfully objected to the interrogatory, having undertaken to answer it, they were required to do so fully, and to supplement their answers in accordance with the rules. *See Gutierrez*, 729 S.W.2d at 693. Alvarado never supplemented his answers to identify Arrambide as a witness, even though he knew at least six days before trial when he subpoenaed her that she would be a witness. Alvarado does not contend that he did not know of Arrambide until he subpoenaed her. Rather, as good cause to admit Arrambide's testimony over Farah's objection, Alvarado argued at a pretrial hearing that Farah had long known of Arrambide because she had sued Farah herself on a similar claim, that Farah had deposed Arrambide in her own case although not in Alvarado's, and that Arrambide would be called as a rebuttal witness. The trial court did not make a specific finding of good cause but simply overruled Farah's objection. The fact that Farah was aware of Arrambide and had deposed her in another case, is not, either in itself or in the circumstances of this case, good cause for allowing Arrambide to testify. Neither is Alvarado's use of Arrambide as a rebuttal witness. Alvarado was asked to identify "each potential witness that you may use in the trial of this case." Arrambide was clearly a potential witness, at least when Alvarado subpoenaed her, and Alvarado clearly indicated to the trial court prior to trial that he intended to call her to testify. She could just as well have testified during Alvarado's case in chief as in rebuttal. We hold that Alvarado's tactical decision prior to trial to call Arrambide on rebuttal was not good cause for failing to comply with discovery. *See Walsh v. Mullane*, 725 S.W.2d 263, 264–65 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). To hold otherwise would be to encourage the very kind of gamesmanship that Rule 215(5) is intended to prevent.[6]

Later during the trial, when Alvarado called Arrambide to the witness stand and Farah renewed its objection, Alvarado asserted a further reason as good cause for allowing Arrambide to testify. Alvarado argued that Arrambide's testimony was necessary to rebut unexpected testimony by Farah's personnel director during its case in chief that Farah would rehire employees with physical limitations. Even if Alvarado's argument had merit, it could hardly support his *pretrial* decision to call Arrambide as a rebuttal witness. Moreover, the testimony Alvarado claims was unexpected was essentially immaterial. Regardless of whether Farah would or would not rehire employees with physical limitations, Alvarado asserted, and Farah's personnel director admitted, that Alvarado did not have any such limitations precluding his return to work. Alvarado argues, somewhat inconsistently, that he did not call Arrambide to rebut specific testimony by Farah's personnel director, but to impeach him generally. Farah's personnel

---

5. Contrary to the dissent's argument, we do not encourage trial courts to disregard or circumvent Rule 215(5). We simply observe that by postponing trial to allow compliance with the rule accompanied by appropriate sanctions, short of the exclusion of testimony, for any discovery abuse, the trial courts are fully empowered to effectuate the purposes of the rule without working an injustice. While Rule 215(5) *might* be revised to better accomplish this result, it does not as written force a trial court to sanction a lesser offense with excessive severity.

6. The dissent argues that there was good cause to admit Arrambide's testimony in this case "be-

cause there was a need to call her as a rebuttal witness and because Farah was not surprised by her testimony." *Post*, at 924. The effect of this reasoning is to refuse to apply the supplementation rule to witnesses deferred to the rebuttal portion of a case for purely tactical reasons. While there may be circumstances in which good cause can be shown for admitting testimony of an undisclosed witness on rebuttal, as for example when the need for the testimony could not reasonably have been anticipated, such circumstances, not present in this case, hardly justify a pretrial decision to save an undisclosed witness for rebuttal.

director was deposed prior to trial, and his credibility was known to be in issue before trial commenced. To the extent Arrambide's testimony was used generally to impeach him, Alvarado certainly knew before trial that she was a potential witness.

■ We therefore hold that the trial court erred in admitting Arrambide's testimony. The question remains whether that error was harmful. *See Gee*, 765 S.W.2d at 396 (erroneous admission of surprise witness' testimony is not harmful if that testimony is "merely cumulative of properly admitted testimony"), *citing McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *accord, McKinney*, 772 S.W.2d at 76. Arrambide testified that she had been fired by Farah one week after the company became aware that she had hired an attorney to file a compensation claim.[7] She was the only witness to testify to these facts; her testimony was not cumulative. It was intended to show that Farah had a pattern of firing employees for filing compensation claims. Alvarado's insistence on using her testimony indicates how important he thought it was to his case. Under the circumstances, we hold that the error in admitting Arrambide's testimony was reversible.[8]

\* \* \* \* \* \*

Whether Rule 215(5) should be revised is an issue which we leave to the processes which exist to study such matters. In this case, consistent with the plain language of

the rule and our prior precedent, we affirm the judgment of the court of appeals.

Justice DOGGETT, J., not sitting.

MAUZY, Justice, dissenting.

The dissenting opinion delivered November 21, 1990, is withdrawn, and the following is substituted therefor.

I respectfully dissent. The trial court properly exercised its discretion in finding good cause to allow the testimony of Jacqueline Arrambide. Furthermore, considering the extensive record in this case, any error in admitting Arrambide's testimony was harmless.

The rule requiring automatic exclusion of testimony from an undisclosed witness is subject to a good cause exception. Tex. R.Civ.P. 215(5). Determination of good cause is within the sound discretion of the trial court and will only be set aside if that discretion was abused. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986). To determine if there is an abuse of discretion, we must look to see if the court acted without reference to any guiding rules and principles. *Id.* at 298.

Arrambide was called as a rebuttal witness to impeach the testimony of Farah's personnel director. This is the first time the court has considered Rule 215(5) in a case involving an undisclosed rebuttal witness.[1] Without any specific guidance from this court, the trial court made a good faith effort to determine whether this rebuttal witness fell under the rule. During the

---

7. We do not, of course, consider whether Arrambide's testimony was admissible apart from Alvarado's failure to identify her in response to discovery.

8. The dissent argues that admission of Arrambide's testimony should not be reversible error because Farah attempted to rebut the testimony and there was other evidence to support the jury's verdict in favor of Alvarado. This argument, far removed from courtroom realities, is belied by the efforts Alvarado made to have the evidence admitted and Farah's efforts to rebut it. Arrambide's testimony was unique. It was certainly calculated to have, and we think probably did have, a singular, powerful effect on the jury.

1. All of the Court's earlier decisions involved either fact witnesses or expert witnesses. *Sharp*

*v. Broadway Nat'l Bank*, 784 S.W.2d 669 (Tex. 1990) (undisclosed expert witness); *Rainbo Baking Co. v. Stafford*, 787 S.W.2d 41 (Tex.1990) (fact witness); *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72 (Tex.1989) (fact witness with special technical knowledge); *Clark v. Trailways, Inc.*, 774 S.W.2d 644 (Tex.1989) (fact witness); *Boothe v. Hausler*, 766 S.W.2d 788 (Tex. 1989) (fact witness); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394 (Tex.1989) (two fact and two expert witnesses); *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363 (Tex.1987) (expert used to establish reasonableness of attorney's fees); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986) (fact witness); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243 (Tex.1985) (fact witness).

pretrial motion hearing, the trial judge responded to Farah's objections by noting, "I don't know of any requirement in the law to disclose the names of rebuttal witnesses." Later, during the trial, Farah cited the case of *Walsh v. Mullane*, 725 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), to support its contention that rebuttal witnesses are covered under the rule.[2] The trial court found this case distinguishable since the complaining party in *Walsh* knew nothing about the undisclosed witness "until the moment she was called to testify." *Id.* at 264. Here, the opponent was already aware of the witness; in fact, Farah's counsel had deposed Arrambide several weeks earlier. Farah had even filed a motion in limine to prohibit Alvarado from calling her. In summing up the situation, the trial court said:

> What we have here is that you all were notified of the possibility that this witness would be used. As a matter of fact, myself, as judge, even ruled on this matter as to whether or not this testimony would be admissible. It's just that she didn't formally in writing modify her discovery.

In other words, all the cards were already on the table.

This court has specifically referred to surprise as a factor for a trial court to consider in deciding whether good cause exists. In *Gee v. Liberty Mut. Life Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989), we stated that "[a]lthough lack of surprise is not the standard, it may be a factor for the trial court to consider when weighing whether good cause exists for allowing the testimony of an undisclosed witness." Thus, lack of surprise is not by itself enough to establish good cause; however, it can definitely be a factor for the trial court to consider in its determination of whether good cause exists. Here, the trial court determined that admission of Arrambide's testimony was warranted because there was a need to call her as a rebuttal witness and because Farah was not surprised by her testimony. Under the facts

of this case, this was not an abuse of discretion.

This court apparently disapproves of the trial court's failure to make a specific finding of good cause. Under our rules, though, the trial court was not required to make an express finding of good cause. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989). The rule requires only that good cause be shown on the record. Tex.R.Civ.P. 215(5). A requirement of stating for the record how the trial court determines good cause would be tantamount to a return to the old form of action practice or recitation of the fiat. Our modern-day legal system rejects such antiquated practices.

Before our court can reverse a judgment, a determination must be made that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 81(b). To determine whether the alleged error probably caused the rendition of an improper judgment, the court must examine the evidence in light of the entire record. *McKinney v. National Union Fire Ins. Co.*, 772 S.W.2d 72 (Tex.1989). The record in this case shows that Farah was not harmed by Arrambide's testimony. Farah called two rebuttal witnesses to refute Arrambide's testimony, Arrambide's former supervisor and Farah's personnel director. Moreover, the jury had ample evidence before it, without considering Arrambide's testimony, to conclude that Farah had wrongfully terminated Alvarado. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d at 397.

In adopting the Texas Rules of Civil Procedure, this court recognized that the real purpose of such rules is to obtain a "just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." Tex. R.Civ.P. 1. Thus, we expressly provided that the rules "shall be given a liberal construction" to achieve justice. *Id.* Rule 215(5) does require the supplementation of all previously-answered discovery motions, and imposes a sanction for the failure to

---

**2.** This is the same case cited by the court as   authority for its holding.

supplement. Like all rules, though, Rule 215(5) must be applied with an eye toward the ultimate goal of fairness. *See* David W. Holman & Byron C. Keeling, *Disclosure of Witnesses in Texas: The Evolution and Application of Rules 166b(6) and 215(5) of the Texas Rules of Civil Procedure*, 42 BAYLOR L.REV. 405, 448 (1990). To be fair, the Rules of Civil Procedure must have some measure of flexibility. That is the reason for the "good cause" exception to Rule 215(5): a trial court must have the discretion to apply the rule in a manner that avoids injustice. Here, it is clear that all the cards were on the table. Nevertheless, the court overturns a valid jury verdict because of a technical defect that harmed no one. Almost five years after the original judgment, this court forces Jose Alvarado back to trial, producing the very sort of injustice that our rules were designed to prevent.

For too long, this court has insisted on a purely mechanical approach to Rule 215(5). A trial court now has virtually no discretion to admit testimony from an undisclosed witness—even if the testimony itself would come as no surprise to either party. Eventually, this court will have to reassess the wisdom of such rigidity. I would undertake that reassessment sooner, rather than later.

The court does acknowledge that its construction of Rule 215(5) produces harsh consequences. Still, in spite of Rule 1, the court chooses not to modify its construction of Rule 215(5) to promote justice, stating emphatically that "we are not free to disregard its plain language." Majority opinion 921.

Apparently, though, trial courts *are* free to disregard the rule's plain language. To mitigate the impact of its holding, the court encourages trial courts to circumvent Rule 215(5) by postponing trials and imposing sanctions under Rule 215(3). Majority Opinion 921. This admonition is directly contrary to the court's own recognition that "Rule 215.5 prescribes a single sanction for failing to supplement discovery." Majority opinion 921. Nothing in Rule 215(5) suggests that a failure to supple-

ment discovery should be cured by postponement of the trial and sanctions under Rule 215(3). The rule unequivocally states that a party failing to supplement *shall not be entitled to present the testimony*, unless good cause exists.

The sanctity of our rules cannot be preserved by encouraging courts to disregard them. Our rules should be interpreted fairly, and applied evenly. If, as the court holds today, good cause did not exist for the admission of Arrambide's testimony, the only proper solution would be to disallow Arrambide from testifying.

I would hold that the trial court did not abuse its discretion in finding good cause to allow Arrambide's testimony. I would therefore affirm the judgment of the trial court.

GONZALEZ and GAMMAGE, JJ., join in this dissenting opinion.