# Supreme Court of Texas

No. 24-1049

Diamond Hydraulics, Inc.,
*Petitioner*,

v.

GAC Equipment, LLC d/b/a Austin Crane Service,
*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued December 4, 2025**

JUSTICE SULLIVAN delivered the opinion of the Court.

This is the case of the bent cylinder. Shortly before trial, an expert witness for Diamond Hydraulics, Inc. changed jobs, left the State, and refused to testify. Diamond promptly moved to substitute a new expert. But the district court denied the motion and made Diamond try its case without any expert testimony. That was an abuse of discretion. Good cause is a demanding standard, not an impossible one. We reverse the judgment of the court of appeals and remand the case for a new trial.

**I**

GAC Equipment, LLC, doing business as Austin Crane Service, hired Diamond to repair one of its cranes. Diamond rebuilt the crane's cylinder, which later bent while lifting a bridge. Diamond blamed poor maintenance and improper operation; Austin Crane blamed Diamond.

Austin Crane hired an engineering firm to inspect the cylinder and investigate the cause of its failure. Austin Crane then sued Diamond for breach of contract and breach of warranty, arguing that Diamond failed to properly repair the cylinder with suitable materials. Diamond sought to inspect the cylinder, but this request and other discovery issues were hotly contested.

Both sides were up against the clock. Under the local rules, the parties were required to make their expert designations by February 10, 2020. Diamond met the deadline, designating Dr. John Behrendt as its testifying expert. But Austin Crane still hadn't agreed to let Diamond inspect the cylinder to investigate the cause of the failure. Diamond was eventually able to test the cylinder in August 2021—more than two years into the litigation, and just months before the scheduled trial.

Both parties made untimely expert designations. Diamond withdrew Dr. Behrendt and replaced him with Dr. Kevin Macfarlan, who worked at KnightHawk Engineering, Inc., the firm Diamond hired to test the cylinder. This switch came 540 days past the expert-designation deadline, and Austin Crane deposed Dr. Macfarlan just 13 days before the scheduled trial. Austin Crane then made a late designation of its own—this time with a rebuttal expert, Dr. Jim Wiethorn. Though its designation was 609 days late, Austin Crane argued that its tardiness was a consequence of Diamond's own late

2

designation. Diamond objected and requested a continuance to allow time for a deposition. The district judge didn't grant the continuance, but instead asked the parties whether they could figure things out within the week. If the parties couldn't make things work, Diamond could reargue the continuance on Monday. Ultimately, the district court continued the case and rescheduled the trial for February 28, 2022.

When February 2022 arrived, the district court reset the case again to accommodate its busy docket. Before the trial could begin, Dr. Macfarlan quit his job at KnightHawk, left the State, and refused to testify. Diamond promptly notified Austin Crane and attempted to substitute Dr. Michael Hoerner in Dr. Macfarlan's place. Dr. Hoerner worked at the same engineering firm as Dr. Macfarlan and helped prepare the relevant expert report. But he was a different type of engineer and served as the head of the firm's materials lab.

Austin Crane opposed the substitution, suggesting instead that Dr. Macfarlan could testify in person or by "Zoom." Now 952 days past the deadline, Diamond served a supplemental disclosure substituting Dr. Hoerner as its testifying expert, filed an emergency motion for leave to supplement its disclosures, and stipulated that Dr. Hoerner held the same opinions as Dr. Macfarlan. Diamond attached an affidavit from Dr. Macfarlan that stated:

- "I am no longer employed with KnightHawk Engineering, Inc."

- "I accepted a different position and started at this new position on August 22, 2022. For this position, I have left the State of Texas and reside in Hamilton County, Ohio. I do not have any current plans to return to Texas."

- "I am not available to testify as an expert witness in Cause No. 19-1077-C425, GAC Equipment, LLC, d/b/a Austin Crane Service v. Diamond Hydraulics, Inc., in the 425th Judicial District Court in Williamson County, Texas set for a jury trial starting October 3, 2022."

Just 17 days before trial, the district court heard Diamond's motion. It encouraged counsel to get in touch with Dr. Macfarlan to confirm what remained possible and requested supplemental briefing on the issue.

The district court denied the motion at the next pretrial hearing. Diamond then orally moved for a continuance to give itself time to file a mandamus petition. The district court denied that motion, too, and the court of appeals denied Diamond's ensuing mandamus petition and motion for emergency stay. At trial, the district court denied Diamond's motion for reconsideration and another motion for continuance.

So the trial began and Diamond had no choice but to proceed without a causation expert. The jury ultimately found for Austin Crane on both the contract claim and the warranty claim. Diamond appealed, arguing that the district court abused its discretion by refusing to allow the late expert designation. The court of appeals affirmed. We granted Diamond's petition for review.

## II

Under Texas Rule of Civil Procedure 193.6, a party can't offer the testimony of an expert who wasn't timely identified. Tex. R. Civ. P. 193.6(a); *Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023). There are two exceptions to this general prohibition. A party may still offer the testimony if a district court determines that either (1) *good cause* existed for the failure, or (2) the failure will not unfairly surprise or prejudice

4

the other party. *See* Tex. R. Civ. P. 193.6(a). The party who failed to designate the expert on time has the burden of proving that one of the exceptions applies. Tex. R. Civ. P. 193.6(b). Furthermore, a district court's ruling excluding testimony can be overturned only if it was an abuse of discretion. *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009). A court abuses its discretion by "acting arbitrarily and unreasonably or misapplying the law to the established facts of the case." *Huynh v. Blanchard*, 694 S.W.3d 648, 674 (Tex. 2024).

## A

Our opinions about late expert designations predate Rule 193.6. Under that rule's predecessor, Rule 215(5), we analyzed a series of cases involving untimely designated witnesses who were allowed to testify anyway. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (collecting cases). At that time, lower courts stressed the goal of deciding cases on their merits, even at the rule's expense. *Id.* This Court sought to restrain that impulse in *Alvarado*.

Like the cases before it, *Alvarado* involved a failed witness disclosure where the witness testified anyway. *Id.* at 912. While we acknowledged a preference for resolving cases on the merits, we also reasoned that "it is not in the interest of justice to apply the rules of procedure unevenly or inconsistently." *Id.* at 914. Rule 215(5) meant what it said: courts *must* exclude testimony from untimely disclosed witnesses unless a party could show "good cause."

This Court was even then considering whether and how to reform Rule 215(5). *Id.* at 915. We appointed task forces to study the issue and recommend revisions. *Id.* Because those revisions weren't yet complete,

5

we "adhere[d] to the language of the rule and our consistent precedent" for the time being. *Id.*

We didn't wait long. In 1999, the substance of Rule 215(5) was reformed by the promulgation of new Rule 193.6. Whereas Rule 215(5) allowed courts to admit untimely disclosed evidence only if good cause was shown, the new rule added a second exception to the prohibition against late expert evidence. Rule 193.6(a) now states in full:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a). So while Rule 193.6 gave judges a second path for admitting untimely disclosed evidence, it did nothing to change the existing "good cause" option.

**B**

Though the "good cause" standard may not be precise, it is demanding. In *Alvarado*, we warned that relaxing this standard would "impair its purpose," which "is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." 830 S.W.2d at 914–15. And we reiterated that one "should not be excused from the requirements of the rule without a strict showing of good cause." *Id.* at 915. These same principles animate our understanding of Rule 193.6 today.

6

But however rigorous the rule's first exception remains in the wake of Rule 193.6's promulgation, it is not strong enough to justify the district court's decision in this case. The good-cause requirement is neither so loose as to "impair its purpose," nor so insurmountable as to be a dead letter. *Id.* To be sure, finding this middle ground will not always be easy. Trial courts must make tough calls. But this call should not have been hard, for four reasons.

**1.** Dr. Macfarlan's unavailability was out of Diamond's control. Only a little more than a month before a long-awaited trial that had been reset twice already, Dr. Macfarlan suddenly left the State with no plans to return. He flatly refused to testify and signed an affidavit stating as much. And after he left the State, Dr. Macfarlan was no longer within subpoena range.

**2.** Diamond tried its best to get Dr. Macfarlan to show up to trial. Diamond's lawyers negotiated with him and pursued other options. But, as Diamond told the district judge, it became clear that Dr. Macfarlan had "a new job, and new obligations," and was "just not going to appear." True, we've said that inadvertence of counsel, lack of surprise, and uniqueness of the excluded evidence are not, alone, enough to establish good cause. *Alvarado*, 830 S.W.2d at 915. But this isn't a case about careless counsel. Diamond didn't recklessly miss its deadline, or drop the ball in response to Dr. Macfarlan's departure. When Diamond learned the distressing news, it promptly notified opposing counsel, sought to offer a new expert, and suggested boundaries on the new expert's testimony to limit any prejudice to Austin Crane.

7

This might've been a harder case had Diamond chosen the path of passivity. A party's good-faith efforts will support a finding of good cause. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex. 1989). Conversely, a party who doesn't try to minimize prejudice to the other side, or who fails to make good-faith efforts to secure its witness's testimony, will not have demonstrated good cause for a substitution. But Diamond didn't stand idly by. When it learned that Dr. Macfarlan was refusing to testify as planned, Diamond immediately sought a solution, only to be frustrated by circumstance and by Austin Crane's unwillingness to negotiate.

**3.** The issue of causation—on which Dr. Macfarlan was supposed to testify—was the cornerstone of this case. The parties used the bulk of their time in discovery and at trial to research and debate what caused the crane to buckle. Austin Crane's experts said one thing; Diamond's said another. This wasn't the type of issue that could be clarified by lay testimony. Causation turned on highly technical matters of metallurgy. So it's unsurprising that Diamond took steps to prove its theory. It retained an engineering firm to support its work, tested the bent cylinder as soon as Austin Crane allowed, and eventually designated one of the engineers as its testifying expert. But, shortly before trial, this vital expert refused to testify. We leave to a future case a decision on whether a party could make an untimely designation of a less central expert. The critical importance of expert testimony here erases any doubt that Diamond had good cause for its untimely expert designation.

**4.** All of this is reason enough to find good cause, so the trial court abused its discretion by failing to properly apply the law to the facts of this case. *See Huynh*, 694 S.W.3d at 674. But a court can also abuse its

8

discretion by "acting arbitrarily and unreasonably," which the district court did by subjecting Austin Crane and Diamond to disparate treatment. *Id.* Austin Crane complains about Diamond's tardiness, yet Diamond was not the only party to make a late designation. Austin Crane did too: It designated its rebuttal expert, Dr. Wiethorn, the day before the (first) pretrial conference, which was more than 600 days after the deadline. The district court allowed Austin Crane's untimely designation over Diamond's objection, so Diamond asked the court for a continuance to give it more time to depose the new expert. Rather than granting the continuance, the court asked the parties to figure out the issue within the week, adding that Diamond could reargue the continuance on Monday if necessary. We've searched the record in vain for a good explanation as to why sauce for the goose couldn't have been sauce for the gander. The trial court's response to the first untimely designation would've worked the second time around: allow a deposition of the new expert shortly before trial. The disparate treatment of the two late designations was arbitrary.

## C

Austin Crane's counterarguments don't hold up. It first disputes the underlying premise that Dr. Macfarlan was unable to testify, finding his affidavit unpersuasive. Austin Crane maintains that Dr. Macfarlan said only that he was unable to testify as an expert witness for the particular trial on October 3, 2022, while saying nothing about his unwillingness to participate in *another* proceeding, whether later in time or by "Zoom." Austin Crane's hyperliteral reading of the affidavit misses the mark. Though Dr. Macfarlan's language may not be perfectly

9

clear, it's clear enough. Rule 193.6(b) allows courts to look to the entire record to determine if good cause exists—not just to affidavits. Tex. R. Civ. P. 193.6(b); *see also Jackson*, 675 S.W.3d at 6 (noting that "nothing in the text of Rule 193.6 requires the trial court's finding to be supported by specific *evidence* in the record when it is otherwise substantiated by counsel's uncontested representations to the trial court"). And here, the entire record and common sense point to the same conclusion: Dr. Macfarlan was not going to testify.

Austin Crane next attributes Diamond's problems to Diamond's own strategic errors. For example, both Austin Crane and the court of appeals contend that Diamond could've asked questions of its own witness during his deposition and that the failure to do so was its own fault. Diamond can't be faulted, however, for failing to anticipate Dr. Macfarlan's unavailability. Lawyers usually save questions of their own witnesses until trial—why give away a sneak peak of your trial theories? Nor was it a solution for Diamond to use a transcript containing only opposing counsel's questions. Many failures could conceivably defeat an otherwise persuasive argument for good cause. A failure to prophesy a witness's future unavailability is not one of them. Furthermore, while a deposition transcript may be helpful evidence, it is no substitute for in-person expert testimony. The ability to offer *some* form of evidence is not, by itself, enough to negate a finding of good cause. In this battle of the experts, a deposition wouldn't have been enough, even if Diamond anticipated Dr. Macfarlan's absence.

Finally, Austin Crane argues that Diamond fails to satisfy the second exception in Rule 193.6 because the late designation would

10

unfairly surprise or prejudice it.  But Rule 193.6(a) uses the disjunctive "or" to join its two exceptions.  Because we hold that there is good cause for the untimely designation, we need not consider whether Austin Crane was unfairly surprised or prejudiced.

## III

The district court abused its discretion in finding that Diamond lacked good cause for its late expert designation.  Rule 193.6(a)'s good-cause standard is a demanding one, and a district court's discretion in this field is significant.  Nevertheless, that standard was met here. The judgment of the court of appeals is therefore reversed, and the case is remanded for a new trial.

James P. Sullivan
Justice

**OPINION DELIVERED:** March 27, 2026

11