Reichhold Chemicals v. Puremco 









WITHDRAWN





IN THE
TENTH COURT OF APPEALS
 

No. 10-91-209-CV

     REICHHOLD CHEMICALS, INC.,
                                                                                              Appellant
     v.

     PUREMCO MANUFACTURING COMPANY,
                                                                                              Appellee
 

From the 74th District Court
McLennan County, Texas
Trial Court # 90-1296-3
                                                                                                    

O P I N I O N
                                                                                                    

      In this suit brought under the Deceptive Trade Practices Act (DTPA), we determine that there
is sufficient evidence to support a jury's findings of violations of the Act and its award of
damages, including lost profits, and attorney's fees. We also determine that the court properly
ruled on a discovery dispute and evidentiary challenges. We will affirm the judgment.
      Puremco Manufacturing Company makes and sells dominos. It purchased part of the resin
that it uses as a raw material for plastic dominos from Reichhold Chemicals, Inc. In September
1989, Puremco experienced an abnormal hardening of resin in the domino molds on its production
line. It claims that this abnormal hardening led to damages to its property and to a loss of profits. 
PUREMCO'S CLAIMS
      Puremco sued Reichhold asserting claims based on breaches of warranty, violations of the
Deceptive Trade Practices Act, negligent misrepresentation, and ordinary negligence.
deceptive trade practices
      Puremco asserted that Reichhold delivered 38,300 pounds of resin to Puremco in June 1989;
that the resin would not cure properly and was not consistent when cured; that the domino molds
were ruined; that production capacity was severely curtailed just prior to its busiest season; that
Puremco ordered an additional 37,000 pounds of resin, which Reichhold delivered in fifty-five
gallon drums; that it experienced similar problems with the additional resin; that the resin required
an unreasonably long time to cure that resulted in increased costs of production; and that
Reichhold violated the DTPA by representing that the resin had sponsorship, approval,
characteristics, ingredients, uses, benefits, or qualities that it did not have, by representing that
the resin was of a particular standard, quality, or grade when it was of another, by failing to
disclose information that, if known to Puremco, would have caused Puremco not to purchase the
resin, by breaching express and implied warranties, and by engaging in an unconscionable course
of action.
breach of warranty
      Puremco asserted that Reichhold breached the implied warranty that the resin was
merchantable and that it was suitable for the purpose of making dominos; that Reichhold knew that
Puremco was relying on its skill or judgment to select suitable resin; and that the breaches were
a cause of its damages.
negligent misrepresentation
      Alternatively, Puremco asserted that Reichhold's agents, Michael Mulvihill and David
Brazell, represented to Puremco that the resin would meet its requirements for the manufacture
of dominos, that the agents either knew that the representations were false or did not make
reasonable inquires about the truth of their representations, that Puremco relied on the
representations to its detriment, and that the agents knew or should have known that Puremco
would rely on the representations. Puremco sought recovery for damages proximately caused by
the false representations.
negligence
      Finally, Puremco asserted that Reichhold negligently breached its duty to supply resin that
was appropriate for Puremco's needs and its duty to "assure and advise [Puremco] with respect
to whether its storage facilities were adequate for handling the storage" of the resin, resulting in
its damages.
damages
      Puremco sought $1,189,723 for past and future lost profits, $69,690 for increased production
costs, $2,415 for "custom orders cancelled," $6,977 for "wholesale orders cancelled," $9,525 to
replace a storage tank, $3,074 for retooling new mold cavities, $1,759 for "credit card charge-back fees", and attorneys fees.
REICHHOLD'S ANSWER AND COUNTERCLAIM
      Reichhold's answer asserted as affirmative defenses: Puremco's failure to give notice under
the DTPA, an express disclaimer of all warranties, the express conditions of the sale limited
damages to replacement of non-conforming goods, contributory negligence, failure to mitigate
damages, sole proximate and producing cause by third parties, new and independent cause by third
parties, comparative responsibility, changes and alterations in the goods after delivery, misuse of
the goods, and offset. Reichhold asserted a counterclaim in contract or quantum meruit for non-payment by Puremco of $25,278 for resin delivered in July 1989 and $23,943.04 for resin
delivered in September 1989 and interest on each sum.
THE JURY FINDINGS AND THE JUDGMENT
      The jury answered in the affirmative to questions inquiring:
      •    Did Reichhold engage in a false, misleading, or deceptive act or practice that was the
producing cause of damage to Puremco?;
      •    Did Reichhold engage in an unconscionable action or course of action that was a
producing cause of damage to Puremco?;
      •    Did Reichhold's negligence proximately cause the occurrence in question?; 
      •    Did Puremco's negligence proximately cause the occurrence in question?;
      •    Did Puremco accept the resin delivered pursuant to the July invoice?; and
      •    Did Reichhold furnish compensable materials to Puremco?
The jury answered in the negative to questions inquiring:
      •    Did Mulvihill or Brazell engaged in a false, misleading, or deceptive act or practice that
was the producing cause of damage to Puremco?; and
      •    Was the failure of Reichhold to comply with a warranty a producing cause of damages
to Puremco?
The jury apportioned the negligence fifty percent to Reichhold and fifty percent to Puremco and
awarded $235,482 for "lost mail order profits," $19,616 for "lost profits from mall operations,"
$7,500 for increased production costs, $4,762 for replacement of a storage tank, $3,038 for
tooling and replacement of mold cavities, and $110,000 for attorney's fees for trial and appeals
through the Supreme Court. The jury further found that $25,278 would fairly compensate
Reichhold for Puremco's failure to pay the July invoice and that $11,972 was the reasonable value
of the compensable materials furnished to Puremco.
      Reichhold asked the court to disregard the jury's DTPA findings and the finding that
Reichhold furnished Puremco $11,972 in compensable materials and to enter judgment for
Reichhold for the full amount of its counterclaim. Reichhold asserted that Puremco is not entitled
to lost profits as a matter of law; that there was no evidence of any representations by its agents,
of a failure by its agents to disclose any information about its resin, or of any intent by its agents
to withhold information; that no evidence existed that its conduct was unconscionable; that there
was no evidence to support any of Puremco's complaints about its damages; that the jury's finding
of a deceptive trade practice conflicted with its failure to find that Reichhold's agents committed
a deceptive trade practice, with its failure to find a breach of warranty, and with its finding that
Puremco accepted the resin delivered on the July invoice; and that Puremco failed to segregate its
attorney's fees between the different claims and defendants.
      The court entered judgment in favor of Puremco for $342,980.59, which was the net
difference between (a) the damages found by the jury with prejudgment interest on certain items
of damage, $2,000 as additional damages under the DTPA, and attorney's fees for the trial and
appeals to the Supreme Court and (b) $59,209.61 plus prejudgment interest which the jury found
to be Reichhold's damages for non-payment.
THE DISCOVERY DISPUTE
      Part A of point three complains that the court improperly allowed Puremco's expert witness
to testify, and point four complains that the court improperly excluded the testimony of
Reichhold's expert witnesses. We will address these points first because our disposition of them
will determine whether we address the remaining points.
puremco's expert testimony
      In discovery Reichhold had asked Puremco to disclose the basis for its calculation of lost
profits of $611,758.27 that had been demanded in a DTPA notice letter. Puremco answered the
interrogatory on September 14, 1990:
Objection. The damage figures set out in this interrogatory are apparently derived from the
DTPA letter forwarded to Defendants as a legal prerequisite to filing a DTPA claim, which
is forthcoming in an amended pleading. The letter, as required by statute, is for settlement
purposes only. The exact amount of Puremco's damage is still being assessed, and while the
amounts set forth in the DTPA letter, dated May 1, 1990, would have been accepted at that
time, no response was ever received from Defendants. Puremco will assess and calculate its
damages as accurately as it can and, with appropriate discovery requests, will set out the
manner in which it calculates those damages once they are more firmly established.

The objection was waived by Puremco's failing to "specifically plead the particular exemption or
immunity from discovery relied upon." See Tex. R. App. P. 166b(4). Because the response was
incomplete when made, Puremco was under a duty to supplement it not less than thirty days prior
to the beginning of trial. See id. at 166b(6). Trial began on September 3, 1991. Thus, the
thirtieth day prior to trial was August 4, a Sunday. 
      Puremco's duty to supplement was clear; its answer to the interrogatory demonstrates that it
knew that the response was incomplete when made. See id. 166b(6)a(2). On August 1, 1991,
thirty-three days before trial, Puremco supplemented its answer to the interrogatory, stating:
In addition to the responses previously provided, the bulk of damage calculations are
available in the preliminary report of Dr. Kent Gilbreath which is available for review. In
addition, damage claims will include the following:
            1.   Custom orders cancelled - $2,415.00;
            2.   Wholesale orders cancelled - $6,977.00;
            3.   Increased production costs - $69,690.00 consisting at least in part, of costs to
remove cured material from molds, purchase of replacement tubing and pump
replacement;
            4.   Cost to replace tank - $9,525.00;
            5.   Tooling replacement mold cavities - $3,074.00;
            6.   Credit card chargeback fees - $1,795.00.
(Emphasis added). This supplemental response refers to the Gilbreath report to disclose the
calculations upon which Puremco would rely in presenting its lost-profits damages. Although
counsel for Puremco contends that Gilbreath's report was transmitted to Reichhold's attorneys with
the letter transmitting the supplemental answers, Reichhold's attorneys requested a copy of the
report on Monday, August 5, 1991, which counsel for Puremco provided. Thus, Reichhold says
that, because it did not receive the report more than thirty days before trial, Gilbreath's testimony
should have been excluded under the automatic sanction of Rule 215. See id. 215(5). The
question is: Did Puremco meet the thirty-day deadline if Reichhold did not receive the calculations
contained in the report until Monday, August 5? The problem is compounded by Reichhold's
claim that, had it received the Gilbreath report timely, it could have met the thirty-day deadline
for supplementing disclosure of its experts—experts who were not permitted to testify. Its
designation of experts was supplemented on Monday, August 5. 
      When Dr. Gilbreath was called to testify, the court had already ruled on Puremco's motion
to exclude Reichhold's expert testimony on grounds that the designation was made too late. 
Reichhold objected to Gilbreath's testifying:
Your honor, we object to any testimony by this witness, because we served the proper
interrogatory asking for damages calculations of the type that his report shows that he will
offer, that the report was not provided to us in the time required by the rules. . . . [T]he fact
is, we did not get the report until August 5th, which was outside the time period that this
Court has already ruled was the proper time for supplementing any kind of discovery, and that
was the first time that we got any kind of indication of the opinions that this witness would
offer or what his calculations were. Based on that failure to supplement and based on the
failure of the rest of the interrogatory answer to include a properly supplemented answer, we
object to the witness being called and being questioned about damage issues under Rule 166(b)
and under Rule 215.

When the court asked for a response, Puremco's counsel stated:
Yes, Your Honor. Our response is that the interrogatory was properly supplemented. 
It designated Dr. Gilbreath as an expert to testify in the case and making it clear that his
report was available for review, and including the report with the letter. [Reichhold's
counsel], I am not disputing, did not get his copy of the report. Our records from our office
reflect that a hand-delivery was made to [Reichhold's local counsel] on August 1, 1991, which
included the Supplemental Response to the interrogatories, included Second Supplemental
Response to Request for Production, and the Second Amended Original Petition, and
reference to the report, which I verified in our office was delivered.

Reichhold's local counsel responded:
Might I respond to that, Your Honor? The signed letter that he is referring to is the letter
by which he sent the records to [Reichhold's counsel] by mail, and although he received the
letter, he did not receive the enclosure, and the same is true in my office.

      In overruling the objection without a good-cause showing, the court impliedly held that
Puremco had properly supplemented its answer to the interrogatory. Of necessity, the court found
that Puremco had furnished the report to Reichhold's local counsel on August 1. Given the record
before us, we cannot say that the court abused its discretion in allowing Dr. Gilbreath to testify. 
We overrule part A of point three.
reichhold's expert testimony
      On August 5, Reichhold designated Rick Owens as an expert witness to "evaluate plaintiff's
damage claims and plaintiff's business records relevant to plaintiff's damage claims." The court
granted Puremco's motion to strike the expert witness because Reichhold failed to disclose him
more than thirty days prior to trial. 
      Reichhold did not supplement its answers to Puremco's interrogatory inquiring about the
identity of expert witnesses until Monday, August 5. The court imposed the automatic sanction
of Rule 215 and did not allow the experts to testify. See id. Reichhold asserts three reasons why
the court erred in refusing to allow its experts to testify: (1) that the supplementation was timely
because the thirtieth day before trial was a Sunday, and Rule 4 allowed it to delay until the
following Monday; (2) that, if the filing was not timely, Reichhold showed good cause for not
complying with the discovery rule; and (3) the court's action in allowing Puremco's expert to
testify and not allowing Reichhold's expert to testify was an abuse of discretion. We will address
each assertion.
      First, we recognize that there is a division of authority about the applicability of Rule 4 to
time periods that are counted backwards in time, as opposed to those counted forward. Compare
Hammonds v. Thomas, 770 S.W.2d 1, 3 (Tex. App.—Texarkana 1989, no writ) (holding that Rule
4 applies to Rule 166a, so that controverting affidavits required to be filed seven days before a
summary-judgment hearing could be filed on July 5 when the seventh day before the hearing was
July 4) with Old Republic Ins. Co. v. Wuensche, 782 S.W.2d 346, 348-49 (Tex. App.—Fort
Worth 1989, writ denied) (affirming the refusal of an amended pleading and holding that Rule 4
does not apply to the "not less than seven days before . . . trial" requirement of Rule 93 for filing
a verified denial). We believe that the Fort Worth court has the better-reasoned position and will
follow its holding that "Rule 4 assumes that time calculations are not calculated backwards from
a date . . . [but] start with some act, event, or default" and was only intended to extend time
periods, not shorten them. See Old Republic Ins. Co., 782 S.W.2d at 348-49; Tex. R. Civ. P.
4. Thus, Reichhold's first argument fails.
      Second, Reichhold argues that it showed good cause for failing to timely designate its experts
because (a) it had attempted to hire an expert who could not work on the matter because he worked
for Puremco's law firm and (b) "Rick Owen of Arthur Anderson . . . confirmed on August 2 that
his firm would accept an engagement, but that he required the opinion of Puremco's damage
expert to identify the individual within his firm able to comment on the opinion." Because, it
asserts, Gilbreath's report was not delivered until Monday, August 5, Reichhold was unable to
determine the name of experts until that date. We are not persuaded by this argument.
      Reichhold's duty under the rules is not dependent on Puremco's performance—if it wanted
an expert to testify, the duty to supplement its response more than thirty days before trial existed
independently of any response from Puremco. If Reichhold chose to wait on Puremco's response
and rely on its ability to show good cause, it did so at its peril. The trial court had discretion to
determine whether the offering party met its burden of showing good cause to admit the testimony;
but the court has no discretion to admit testimony excluded by the rule without a showing of good
cause. See Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 162 (Tex. 1992); Alvarado v. Farah
Mfg. Co., Inc., 830 S.W.2d 911, 914 (Tex. 1992). The good-cause exception permits a trial court
to excuse a failure to comply with discovery in "difficult or impossible circumstances." Alvarado,
830 S.W.2d at 914. We do not find that Reichhold was laboring under difficult or impossible
circumstances in determining which experts to timely identify. See id. Thus, the court did not
abuse its discretion in refusing to allow its experts to testify. Finally, we cannot agree with
Reichhold's contention because we have held that the court impliedly found that its local counsel
received the report on August 1, more than thirty days before trial.
      Finally, Reichhold argues that the court applied Rule 4 inconsistently in determining that
Gilbreath's report was a timely supplemental response to interrogatories, but that Reichhold's
supplemental response designating its experts was not timely. As we have noted, Rule 4 does not
apply to the time period for supplementation, and the court impliedly found that Reichhold's local
counsel received the report on August 1.
      We overrule point four.
EVIDENTIARY CHALLENGES
      In two points, Reichhold attacks the court's action in admitting certain items of evidence.
      Evidence is relevant if it has any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence. Tex. R. Civ. Evid. 401. Rule 402 provides in part: "Evidence which is
not relevant is inadmissible." Tex. R. Civ. Evid. 402. The determination of whether evidence
is relevant to any issue in the case lies within the sound discretion of the court. Russell v.
Hankerson, 771 S.W.2d 650, 654 (Tex. App.—Corpus Christi 1989, writ denied). 
      Preliminary questions concerning admissibility of evidence are determined by the court. Tex.
R. Civ. Evid. 104(a). This determination will not be overturned absent an abuse of discretion. 
Steenbergen v. Ford Motor Co., 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied),
cert. denied, ___U.S.___, 113 S. Ct. 97, 121 L. Ed. 2d (1992). Further, error may not be
predicated upon a ruling that admits or excludes evidence unless a substantial right of the party
is affected. Tex. R. Civ. Evid. 103(a). The test for determining whether an abuse of discretion
has occurred is, did the court act contrary to the guiding rules or principles. Stated another way,
was the court's action arbitrary or unreasonable? Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721
(1986). The determination of whether a court abused its discretion is a question of law. Jackson
v. Van Winkle, 660 S.W.2d 807, 810 (Tex. 1983). 
photographs
      In point seven Reichhold contends that the court erred in refusing to admit into evidence
photographs of the interior and exterior of Puremco's underground storage tank. After the
evidence had closed, the court allowed Reichhold to recall Puremco's president, David Allen, to
testify. Through his testimony Reichhold offered a series of nine photographs. The court
admitted some of the photographs and excluded others. Reichhold asserts that Allen testified that
the tank had not been cleaned or disturbed when the photographs were taken. Thus, it says, the
condition of the tank was relevant to a damage issue that was submitted to the jury. Puremco
asserts that Allen's testimony clearly demonstrated that the photographs do not reflect the
condition of the tank at the time of the incident.
      The admissibility of a photograph is conditioned upon its identification by a witness as an
accurate portrayal of the facts and on verification by that witness or a person with knowledge that
the photograph is a correct representation of such facts. Davidson v. Great Nat'l Life Ins. Co.,
737 S.W.2d 312, 314-15 (Tex. 1987). Our review of the record reveals that the photographs that
the court would not admit were those that the sponsoring witness said did not show the true
condition of the tank at the relevant time, i.e., when the damage was claimed to have occurred. 
See id. Thus, the court did not abuse its discretion in refusing to admit these photographs. We
overrule point seven.
accounting evidence
      Point three asserts that the court erred in admitting accounting evidence through Allen, who
testified about and sponsored documents showing various aspects of Puremco's operations. 
Although Reichhold contends that Allen did not qualify as an expert, it cites no authority for the
proposition that the accounting evidence was inadmissible.
      Puremco plead that Reichhold's acts caused it to lose profits. Reichhold defended, in part,
on the basis that Puremco could not recover lost profits because it had never made a profit. Allen,
as president of the company, could properly testify from the records of the company about the
profitability of the company and about the various components of its costs. The court could have
determined that the records were relevant to the jury's evaluation of Puremco's lost-profit claim
or to its claim for increased production costs. An overall evaluation of the evidence leads to the
conclusion that the court did not abuse its discretion in admitting the accounting records into
evidence. See Steenbergen, 814 S.W.2d at 760; Tex. R. Civ. Evid. 401.
gilbreath's report
      Point three further asserts that Gilbreath's written report should not have been admitted into
evidence. Citing Hirdler v. Boyd, 702 S.W.2d 727 (Tex. App.—San Antonio 1986, writ ref'd
n.r.e) and Texas Employer's Ins. Ass'n v. Sauceda, 636 S.W.2d 494 (Tex. App.—San Antonio
1982, no writ), Reichhold contends that an expert's report prepared for purposes of litigation is
not admissible. Puremco contends that Reichhold did not properly preserve this complaint for
appellate review, and if preserved, that the court properly admitted the exhibit to aid the jury as
"an explanatory adjunct" to Gilbreath's testimony. Without considering whether the complaint
was properly preserved, we believe that admission of the report was within the court's discretion. 
See Speier v. Webster College, 616 S.W.2d 617, 618 (Tex. 1981). We would, in any event, hold
that admission of the report was not reasonably calculated to cause, nor did it probably cause, an
improper judgment; the jury's answers to the question about lost profits are substantially less than
the amount of lost profits found by Gilbreath. See Tex. R. App. P. 81(b)(1).
      We overrule point three.
DTPA NOTICE
      In point eight Reichhold complains of the court's denial of its special exception and plea in
abatement based on an alleged failure to give adequate statutory notice under the DTPA. See Tex.
Bus. & Com. Code Ann. § 17.505 (Vernon Supp. 1993). Puremco's original petition, filed on
April 5, 1990, did not specify that the claims were brought under the DTPA. On May 1 it sent
Reichhold a demand letter, asserting DTPA claims. Reichhold contends that, because a petition
that does not reference the DTPA may nevertheless be sufficient to recover under the Act, the
court should have abated the suit because Puremco sent no notice prior to filing the April 5
petition. Puremco acknowledges that it filed suit before giving any DTPA notice but asserts that
the original suit was not a "DTPA lawsuit." Further, it asserts that a pleading filed on August 1,
1991, was the "first pleading seeking damages under . . . the DTPA." Reichhold filed its Special
Exceptions and Plea in Abatement on August 29, 1991—more than a year after it received the
DTPA notice of May 1, 1990—apparently in response to the DTPA allegations contained in
Puremco's August 1 pleading. Although the record does not reveal that the court ever acted on
the special exceptions, the Plea in Abatement was denied by a written order.
      The purpose of the notice requirement of the DTPA is to discourage litigation and to
encourage settlement of consumer complaints. Jim Walter Homes, Inc. v. Valencia, 679 S.W.2d
29, 36 (Tex. App.—Corpus Christi 1984), affirmed as modified, 690 S.W.2d 239 (Tex. 1985). 
Puremco knew on April 5, 1990, that it intended to assert a DTPA claim. On the other hand,
having had a suit filed against it and having received a DTPA notice less than thirty days later,
why Reichhold would wait until the DTPA claims were specifically asserted to file its pleas of lack
of notice is not explained or readily apparent. Puremco's notice letter of May 1, 1990, was sent
more than sixty days prior to its asserting a DTPA claim. Because section 17.505 provides that
a written notice is "a prerequisite to filing a suit seeking damages under Subdivision (1) of
Subsection (b) of Section 17.50," we believe that the court correctly denied Reichhold's Plea in
Abatement. See Tex. Bus. & Com. Code Ann. § 17.505. Although we do not commend the
practice of filing suit and giving notice under the DTPA less than 30 days later, we overrule point
eight.
SUFFICIENCY OF THE EVIDENCE
      Reichhold asserts seven no-evidence and insufficient-evidence points. We will address them
individually under the recognized standards of review.
      When the complaining party challenges the legal sufficiency of the evidence to support a
finding that favors the party who had the burden of proof on that finding, the reviewing court must
sustain the finding if, considering only that evidence and the inferences which support the finding
in the light most favorable to the finding and disregarding evidence and inferences to the contrary,
any probative evidence supports it. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex.
1981); Miller v. Riata Cadillac Co., 517 S.W.2d 773, 777 (Tex. 1974). If there is more than a
scintilla of evidence to support the finding, the no- evidence challenge fails. Id. Evidence is no
more than a scintilla when it is "so weak as to do no more than create a mere surmise or suspicion
of [the fact's] existence." Seideneck v. Cal Bayreuther Assoc., 451 S.W.2d 752, 755 (Tex. 1970)
(citing Robert W. Calvert, "No Evidence" & "Insufficient Evidence" Points of Error, 38 Tex. L.
Rev. 361 (1960)). A no-evidence point can only be sustained when the record reveals one of the
following: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence
bar us from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes
the opposite of a vital fact. See Juliette Fowler Homes, Inc. v. Welch Assoc., Inc., 793 S.W.2d
660, 666 n.9 (Tex. 1990).
      In reviewing an insufficient-evidence point, we have a duty to review the entire record. See
In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). When the complaining party
challenges the factual sufficiency of the evidence to support a finding that favors the party who
had the burden of proof on that finding, the reviewing court must sustain the finding unless all the
evidence, both for and against the finding, is so weak or insufficient that the finding is manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Because Puremco had the burden of
proof on all findings attacked by Reichhold, we will review Reichhold's factual-sufficiency
challenges to those findings using this standard. See id.
dtpa findings
      In point six Reichhold asserts that the evidence is legally or factually insufficient to support
the jury's finding to question one that it engaged in a false, misleading or deceptive act or practice
that was a producing cause of damages to Puremco and to question six that it engaged in an
unconscionable action or course of action. It asserts that: (1) the evidence did not support the
jury's answer, (2) it was not unconscionable, (3) Puremco's knowledge of problems with its own
tank precludes a finding of a "failure to disclose," and (4) Puremco was not a consumer of
inspection services. 
      In question one the jury was asked:
Did Reichhold engage in any false, misleading or deceptive act or practice that was a
producing cause of damages to Puremco?
"Producing cause" means an efficient, exciting or contributing cause that, in a natural
sequence, produced the damages, if any. There may be more than one producing cause.
"False, misleading or deceptive act or practice" means any of the following:
            (a)  Representing that the resin sold to Puremco had characteristics, ingredients, uses or
benefits which it did not have;
            (b)  Representing that the resin sold to Puremco was of a particular standard, quality or
grade, when it was of another; or
            (c)  Failing to disclose information about goods or services that was known at the time
of the transaction with the intention to induce Puremco into a transaction.
In question four the jury was asked:
Did Reichhold engage in any unconscionable action or course of action that was a
producing cause of damages to Puremco?
            [Producing cause definition repeated].
"An unconscionable action or course of action" is an act or practice that, to a party's
detriment takes advantage of the lack of knowledge, ability, experience or capacity of a party
to a grossly unfair degree.
The jury answered "yes" to questions one and four. Questions two and three inquired, in the same
language as question one, whether Michael Mulvihill or David Brazell, salesman for Reichhold,
committed any false, misleading or deceptive act or practice that was a producing cause of
Puremco's damages. In both instances the jury answered "no."
      Reichhold first contends that, because the jury found that Mulvihill and Brazell did not
commit a false, misleading, or deceptive act, the only possible agent of Reichhold who could have
committed such an act was Ken Lipovski, Reichhold's technical representative. Thus, although
Lipovski told Tony Hughes, Puremco's production manager, that adjustments would be made to
the resin formula to meet Puremco's hardness complaints and that the resin would meet Puremco's
color and hardness specifications, Reichhold says there is no evidence that the resin did not meet
these specifications, that any such statement induced Puremco to purchase the shipment of resin
in question, or that any of Lipovsky's representations produced Puremco's damages.
      Puremco, on the other hand, claims that the evidence shows that Hughes complained to
Lipovsky about the quality of prior resin shipments; that Lipovsky told Hughes that he, Lipovsky,
formulated the resin; that Lipovsky represented that he could change the formulation to meet
Puremco's standards by changing the "inhibitor"; that the reformulated material would be ready
at any time Puremco desired; and that, following Lipovsky's assurances, Hughes ordered another
shipment of resin in July 1989. Puremco further says that this testimony, taken with other
evidence of the problems that developed after use of the resin, is probative evidence that supports
the jury's affirmative finding to question one. Because we must consider only the evidence and
the inferences which support the finding in the light most favorable to the finding and disregard
evidence and inferences to the contrary, we find that there is probative evidence to support the
finding that Reichhold violated the DTPA. See Glover, 619 S.W.2d at 401. Considering all of
the evidence, both for and against the finding, we cannot determine that the finding of a DTPA
violation is so weak or insufficient that the finding is manifestly unjust. See Cain, 709 S.W.2d
at 176. 
      Because we find evidence to support an affirmative answer to question one under subparts (a)
and (b), we do not address Reichhold's contentions—that there is no evidence of a "failure to
disclose," that Puremco's knowledge of its tank problems precludes a finding of causation for the
failure to disclose, or that Puremco was not a consumer of inspection services, i.e., that Puremco
never sought any inspection or evaluation of its tank from Reichhold—directed toward the inquiry
under subpart (c) of question one.
      We next address Reichhold's assertion that it did not act "unconscionably." Asserting that
a party cannot complain of another's conduct when the complaining party requested the conduct,
it asserts that the July 1989 resin delivery was made in the same fashion as previous deliveries and
that, because its conduct was consistent with past dealings with Puremco, it could not have taken
advantage of Puremco. It points out that Puremco knew it should not allow the resin to become
contaminated and had evidence that its tank was not sound—evidence never provided to Reichhold.
      Puremco contends that the evidence established that Reichhold had superior knowledge of
making and selling polyester resins. It also points out that Reichhold had information about the
proper and safe way to store its resins but never told Puremco that its method of storing the resin
was not appropriate. The evidence shows that Reichhold provided this information to customers
planning new installations if they asked for it.
      Considering only the evidence and the inferences which support the finding of
unconscionability in the light most favorable to the finding and disregarding evidence and
inferences to the contrary, we find that there is probative evidence to support the jury's finding
of an unconscionable course of action. See Glover, 619 S.W.2d at 401. Considering all of the
evidence, both for and against the finding, we cannot determine that the finding of
unconscionability is so weak or insufficient that the finding is manifestly unjust. See Cain, 709
S.W.2d at 176. 
lost profits
      In response to question number eight, the jury found that Puremco's damages included
$234,482 in lost profits from mail-order operations and $19,616 in lost profits from "mall
operations." It found no damages for lost profits in the future. In point one, Reichhold asserts
that the evidence is legally or factually insufficient to support the jury's finding that Puremco had
lost profits. Specifically, it asserts that Puremco cannot recover lost profits as a matter of law
because it had never made a profit. The evidence shows that from 1982 through 1990 Puremco
lost $39,928 in its best year and $374,619 in its worst year, accumulating a total loss of
$2,887,763.
      An additional evidentiary obstacle is imposed upon one who seeks to recover lost profits.
Proof of lost profits must be shown by competent evidence with reasonable certainty. Holt
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). A recovery does not, however,
depend on an exact calculation. Id. What constitutes reasonable certainty is a fact intensive
determination. Id. At a minimum, opinions or estimates of lost profits must be based on objective
facts, figures, or data from which the amount of lost profits can be ascertained. Id. Loss of net
profits, not lost income, is the correct measure of damages. Id.; Turner v. PV Int'l Corp., 765
S.W.2d 455, 465 (Tex. App.—Dallas 1988), writ denied per curiam, 778 S.W.2d 865 (Tex.
1989). 
      Generally, proof of an operation of a business at a loss, without more, fails to meet the test
of showing lost profits with reasonable certainty. Turner, 765 S.W.2d at 465. A business with
a history of net losses can recover lost profits, however, if it can demonstrate that the defendant's
conduct caused it to lose specific business from which it would have realized a certain profit. 
Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 257-58 (Tex. App.—Corpus Christi 1987,
writ ref'd n.r.e.). 
      Thus, if the evidence of lost profits does not meet these tests, the court is barred by a rule of
law from giving weight to the only evidence offered to prove a vital fact, and the evidence will
be legally insufficient to support the finding of lost profits. Juliette Fowler Homes, Inc., 793
S.W.2d at 666 n.9.
      Puremco's proof was designed to show that it lost profits during the 1989 and 1990 Christmas
seasons from both catalog mail-order operations and mall operations by comparing those seasons
with the three immediately preceding Christmas seasons. The evidence shows that its pre-1989
catalog mail-order operations had always been profitable. Puremco's expert witness, Gilbreath,
testified that, under one scenario, his opinion was that Puremco lost potential profits during those
two years of $336,666 from mail-order operations and $78,465 from mall operations. Under the
second scenario, his opinion was that Puremco lost potential profits of $605,263 from mail-order
operations and $78,465 from mall operations. He also testified that Puremco lost future profits
of $296,136 to $505,595. 
      Gilbreath testified that his opinion was based on information obtained from Puremco that he
considered to be reasonable, including (a) records of orders received, numbers of catalogs mailed,
total sales, mail-order sales, and the dollar value of sales from 1986 through 1990, and (b) data
from mall sales in Texas and Oklahoma, including Puremco's actual experience at a mall in Waco. 
He also obtained data on general Christmas retail sales in 1989 and 1990. Other evidence was
introduced by either Puremco or Reichhold about the type of advertising materials it used, its
catalogs, sales analysis reports, mall operations, costs of merchandise, commissions, direct costs,
packaging and shipping costs, labor, order-processing costs, repairs, marginal costs, and other
historical reports and data about its overall operations. From the testimony and documents
introduced, we conclude that there is evidence in the record from which the jury could determine
Puremco's lost profits by competent evidence with reasonable certainty. See Holt Atherton, 835
S.W.2d at 84. Gilbreath's opinion testimony of lost profits is based on objective facts, figures,
or data. See id. Even though Puremco had never been profitable, we believe that the evidence
is sufficient to support a finding that Reichhold's conduct caused it to lose specific business from
which it would have realized a certain profit. Frank B. Hall & Co., 733 S.W.2d at 257-58.
      Considering only that evidence and the inferences which support the finding of lost profits in
the light most favorable to the finding and disregarding evidence and inferences to the contrary,
we find probative evidence to support the jury's answer. See Glover, 619 S.W.2d at 401. 
Considering all of the evidence, both for and against the finding, we cannot say that the evidence
in support of the finding is so weak or insufficient that the finding is manifestly unjust. See Cain,
709 S.W.2d at 176. We overrule point one.
causation
      In point two, Reichhold asserts that the evidence is legally or factually insufficient to support
the jury's finding that Puremco's loss was due to Reichhold's actions. It contends that Puremco
offered no evidence linking the interruption in its operations to its claim of lost profits. In support
of this contention, it points out that Puremco was organized into a production facility and an office
operation and that the employees in one operation did not work in the other. Puremco, however,
introduced evidence that the loss of production capacity resulted in its inability to fill orders timely
and in cancelled and refused orders. 
      Producing cause is an efficient, exciting, or contributing cause that in a natural sequence
produced the injury complained of. Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975). The
question of causation is one for the trier of fact. Considering only that evidence and the inferences
which support the finding—that Reichhold's acts contributed in a natural sequence to Puremco's
damages—in the light most favorable to the finding and disregarding evidence and inferences to
the contrary, we find probative evidence to support the jury's answer. See Glover, 619 S.W.2d
at 401. Considering all of the evidence, both for and against the finding, we cannot say that the
evidence in support of the finding is so weak or insufficient that the finding is manifestly unjust. 
See Cain, 709 S.W.2d at 176. We overrule point two.
attorney's fees
      Reichhold's point nine asserts that there is no evidence or insufficient evidence to support the
jury's award of attorney's fees to Puremco. In support of this assertion it claims that, because
Puremco did not file a DTPA action until thirty-four days before the trial date, its attorney's fees
were expended on the negligence claim which it had asserted and not on a DTPA action and that
the fees were not segregated between the claims.
      We agree with Puremco that "a party need not segregate attorney's fees when the claims arise
out of the same transaction and are so interrelated that their prosecution or defense involves proof
of essentially the same facts." See 4M Linen & Uniform v. W.P. Ballard & Co., 793 S.W.2d 320,
327 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (citing Flint & Assoc. v. Intercontinental
Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.—Dallas 1987, writ denied). Puremco
sent a DTPA letter on May 1, 1990, less than thirty days after filing suit. Puremco's attorney
testified that the fees could not be segregated between Reichhold, Mulvihill, and Brazell, but was
never questioned about segregating the fees between the types of claims. It is reasonable to
believe that from May 1, 1990, until it filed its DTPA pleadings, Puremco's attorneys were
engaged in preparing for all of its claims against Reichhold—all of which arose out of the same
facts and circumstances. We hold that the evidence is legally and factually sufficient to support
the jury's findings on attorney's fees. See Glover, 619 S.W.2d at 401; Cain, 709 S.W.2d at 176. 
We overrule point nine.
POINTS NOT REACHED
      In point five Reichhold contends that the jury's answers to questions two and three—absolving
Mulvihill and Brazell of any violation of the DTPA—constitutes an irreconcilable conflict with the
answer to question one. Because we have found probative evidence that supports the jury's
affirmative finding to question one—the DTPA question inquiring about acts and practices of
Reichhold—we do not reach this point. Because of our disposition of Reichhold's other points,
we do not reach its point that the finding of attorney's fees will be immaterial or excessive if its
DTPA points are sustained or its point concerning the insufficiency of the evidence to support the
finding that it was negligent.
CONCLUSION
      Having overruled all of Reichhold's applicable points of error, we affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 17, 1993.
Do not publish
[OP WITHDRAWN 4-7-93]