IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00146-CR

 

Brian Demon Ward,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 06-02558-CRF-85

 



MEMORANDUM  Opinion










 

            Brian Demon Ward was convicted of
possession with the intent to deliver cocaine, enhanced, and sentenced to 19
years in prison.

            In his sole issue, Ward contends the
trial court erred in admitting “testimonial statements” in violation of the
United States Constitution[1] as
interpreted by Crawford v. Washington.[2] 
The relevant facts in this case and the applicable law, are indistinguishable
from the relevant facts and applicable law in Curry v. State in the
resolution of the third issue under the heading ‘Testimonial Statements.’[3]  Curry v. State, 228
S.W.3d 292, 298-299 (Tex. App.—Waco 2007, pet. ref’d).  For the reasons stated
therein, Appellant’s only issue is overruled, and the trial court’s judgment is
affirmed.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed January 9, 2008

Do
not publish 

[CR25]









[1] Ward
also mentions in the title of his issue that the admission of evidence violates
the Texas Constitution.  However, in the body of his argument, he makes no
distinction between his rights under the Texas Constitution and his rights
under the United States Constitution.  We make no distinction either.  See
Luquis v. State, 72 S.W.3d 355, 364 (Tex. Crim. App. 2002)
("Appellant makes no distinction between his rights under the Texas and federal constitutions. Therefore we will treat them as being the same in this
context."); Smith v. State, 898 S.W.2d 838, 847 (Tex. Crim. App.
1995) ("Appellant proffers no argument or authority of how the protection
offered by the Texas Constitution differs from the protection guaranteed by the
U.S. Constitution [citations omitted]. We are not inclined to make appellant's
arguments for him."); Johnson v. State, 853 S.W.2d 527, 533 (Tex.
Crim. App. 1992) ("We decline to pursue appellant's Texas Constitutional
arguments for him.").

 





[2] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

 





[3]
“This case is, factually, a companion case to Curry.  The
confidential informant is the same, the technique (surveillance video) is the same,
and the location of the transaction is the same.  The arrests in the respective
cases also took place on the same day.  Curry was named during
the trial as a previous ‘buy’ during testimony.”  Appellant’s brief at 3 n.1.








argin-right: 0.3in">6.The actual damages incurred by Frank Cross, Inc. as a result of Walter B. Waldie
III, Inc.'s failure to comply with the partnership agreement was $31,879.50. The
actual damages incurred by Frank Cross, Inc. as a result of Charles Durtschi, Inc.'s
failure to comply with the partnership agreement was also $31,879.50
7.Walter B. Waldie III knowingly failed to account to Frank Cross, Inc. for its
partnership interest. Charles Durtschi knowingly failed to account to Frank Cross,
Inc. for its partnership interest.
8.The sum of money which should be assessed against Walter B. Waldie III as actual
damages for failing to account to Frank Cross, Inc. for its partnership interest is
$31,879.50. The sum of money which should be assessed against Charles Durtschi
as actual damages for failing to account to Frank Cross, Inc. for its partnership
interest is $31,879.50.
9.The jury failed to find that the plaintiffs were entitled to recover any exemplary
damages from the defendants.
      10. A reasonable fee for the necessary services of plaintiffs' attorney in this case is as
follows:
                  a.For preparation and trial$24,000
                  b.For an appeal to the court of appealsZero
                  c.For making or responding to an application for writ of
error to the Supreme Court of TexasZero
                  d.If application for writ of error is granted by the
Supreme Court of TexasZero
11.Walter B. Waldie III, Inc. was the alter ego of Walter B. Waldie III individually.
12.Charles Durtschi, Inc. was the alter ego of Charles Durtschi individually.
13.The jury failed to find that the plaintiff (Cross) had been guilty of laches in asserting
its rights under the partnership agreement or in filing the lawsuit.
      After the jury verdict, the trial court entered its judgment as follows:
(1) That plaintiffs Frank Cross and Frank Cross, Inc. recover from all four
defendants jointly and severally the amount of $113,092.33 as actual damages.
(2) That plaintiffs recover from all four defendants jointly and severally the amount
of $24,000 as reasonable and necessary attorney's fees for trial of this case.
(3) That plaintiffs recover from all four defendants jointly and severally
prejudgment interest of 10% per annum, compounded annually, on the actual
damages from March 5, 1985, until the date the judgment was signed, plus costs of
court, plus post-judgment interest on all damages, costs , and attorney's fees at 10%
per annum, beginning on the date following the signing of the judgment, until said
judgment is fully satisfied. It was further ordered that the defendants take nothing on
their counterclaims against plaintiffs. Likewise, defendants were denied any
recovery of attorneys' fees in the event of appeal to the court of appeals or to the
Supreme Court of Texas.
      Defendant-Appellants Walter B. Waldie III, Charles Durtschi, Walter B. Waldie III, Inc., and
Durtschi, Inc. come to this court on twenty-three points of error. Plaintiff-Appellees Frank Cross
and Frank Cross, Inc. assert two cross-points of error.
      Appellants' first point asserts the trial court erred in admitting evidence of settlement
negotiations between the parties.
      The trial court properly allowed the admission of evidence regarding a proposal and counter-proposal made between the parties because such testimony was not evidence of compromise
settlement offers. Appellants complain that the admission of a proposal by Waldie and Durtschi
and a counter-proposal by Cross was error for the reason that the proposal and counter-proposal
constituted settlement offers which fall under the prohibitions of Rule 408 of the Texas Rules of
Civil Evidence. We do not agree.
      Newell H. Blakely, Article IV, Relevancy and Its Limits, 20 Houston Law Review 151 at page
225 (1983 Texas Rules of Evidence Handbook) has this to say:
"Although many courts hold that an offer to compromise is not admissible on the
issue of liability, precisely what constitutes an offer to compromise is not clear. At least
in Texas, courts seemed to have required two elements: a pre-existing dispute, and a
proposal of concession for the sake of peace."
Hundere v. Tracy and Cook, 494 S.W.2d 237, 260-261 (Tex. Civ. App.—San Antonio 1958, writ
ref'd n.r.e.); Sawyer v. Willis, 310 S.W.2d 398, 399 (Tex. Civ. App.—San Antonio 1973, no
writ).
      In Sawyer the court, speaking through Justice Barrow, at page 399 said:
"It is settled that an offer of compromise and settlement of a pending controversy is
not admissible in evidence. McCormick & Ray, Law of Evidence, 2d Ed., Vol. 2, p. 29,
§ 1142. However, as to what constitutes an offer of compromise and settlement coming
within the rule, in some cases, presents no small difficulty, but it is clear that the offer
must not represent the party's actual claim, but rather what he is willing to give or take
to avoid the annoyance of litigation. Moreover, it seems clear that there must have been
a dispute between the parties prior to the making of the offer. In this case, the record
fails to show any previous dispute . . . ." The above quoted language is stated in
Hundere at page 260.
      In the case at bar, there was no evidence of prior negotiations or disputes between the parties. 
Cross testified that at the time the parties agreed to dissolve the partnership, the only complaint
he had with Waldie and Durtschi was the fact that Martha Waldie was working in the office. 
There was no evidence that Waldie or Durtschi denied or disputed the validity of Cross' claim that
he was owed some amount for his partnership interest. Waldie testified that after his conversation
with Cross in December 1984, Cross informed him to assume that he would be leaving the
partnership and that he wanted Waldie to provide him with a proposal. Apparently this was
agreeable to Waldie and Durtschi since Waldie began to move quickly at preparing an inventory. 
There simply was no pre-existing or existing dispute at the time these proposals were being
exchanged. As Mr. Waldie testified, all parties seemed willing to make an agreement with Cross
for the disposition of the assets of the partnership.
      Furthermore, the proposal made by Waldie and Durtschi to Cross did not represent a
concession or compromise on their part. Quite to the contrary, it can be inferred from the
evidence that the proposal by Waldie and Durtschi was one intended to extract a monetary
advantage over Cross, since Durtschi was overheard telling Waldie that, at least with respect to
the inventory, the lowest possible valuation should be put on the inventory. At the least, the
Waldie and Durtschi proposal to Cross was not an offer of compromise since the proposal was
made after Waldie had considered the fair market value of the fixtures, furniture and equipment,
offset by the partnership liabilities.
      Lastly, when Appellants' counsel objected to the admission of the proposal, it was pointed out
to the trial court that the proposal was prepared by Waldie himself who had been listed by
Appellants as an expert witness to testify as to the value of the partnership property. Accordingly,
the document had extensive probative value as to the issues before the court.
      With respect to Cross' February 8, 1985, counter-proposal, it was evidently based on what
Cross thought the value of his partnership interest was and did not involve any concession or
compromise on Cross' part. After Cross had delivered his counter-proposal to Waldie and
Durtschi, there was apparently no dispute as to the validity or amount claimed by Cross since
Waldie simply informed Cross that he was aware that both he and Durtschi owed Cross the
money, but they simply could not afford to pay it at the time. Accordingly, the court did not err
in the admission of evidence regarding the proposal and counter-proposal between the parties,
since it did not constitute evidence of compromise settlement negotiations.
      Appellants' first point of error is overruled.
      Appellants' second and third points of error contend that there is no evidence and insufficient
evidence to support the jury's answer to Special Issue No. 1, to-wit, that the partnership dissolved
on March 5, 1985. Here, Appellants' argument is the evidence concerning the conversation which
allegedly occurred on or before December 17, 1984, between Waldie and Cross wherein Waldie
informed Cross that they were going to dissolve the partnership. Appellants then point out that
Section 31 of the Texas Uniform Partnership Act provides that dissolution may be caused "by the
express will of any partner when no definite term or particular undertaking is specified." Tex.
Rev. Civ. Stat. Ann. art. 6132b, § 31(1)(b).
      Appellants' argument, though, fails to take into consideration the evidence the jury was
instructed to consider in answering Question No. 1. In answering Question No. 1, the jury was
instructed that "[t]he dissolution of a partnership is the change in the relation of the partners
caused by any partners ceasing to be associated in carrying on, as distinguished from winding up
of the business. Based on the Court's instruction to the jury in connection with Question No. 1,
the issue then becomes whether there was sufficient evidence to support a jury's finding that as
of March 5, 1990, there was a change in the relation of the partners in carrying on as opposed to
the winding up of partnership affairs. The issue is not whether a partner expressly stated his
desire to dissolve the partnership as Appellants would lead this court to believe. The jury found
the correct answer to Question No. 1 based on the trial court's instruction contained in the charge. 
Appellants are apparently in disagreement with the jury's response to Question No. 1 because the
jury was not instructed to consider that a partnership may be dissolved by the "express will of any
partner."
      Rule 274 of the Texas Rules of Civil Procedure provides that:
"A party objecting to a charge must point out distinctly the objectionable matter and
the grounds of the objection. Any complaint as to a question, definition or instruction,
on account of any defect, omission, or fault in pleading, is waived unless specifically
included in the objections . . . ."
(Emphasis added).
      In construing this rule, our Supreme Court in Allen v. American National Insurance Co., 380
S.W.2d 604 at p. 609 (Tex. 1964), says:
"Where, however, the ground (of recovery or defense) is submitted, however
erroneously or incompletely, the parties are thereby put upon notice that the jury's
answers to the issues actually submitted will form the basis of the court's judgment
thereafter to be rendered thereon. It then becomes the duty of each party to point out
errors of omission or commission, or be held estopped from thereafter urging them."
Also see Mowery v. Fantastic Homes, Inc., 568 S.W.2d 171 (Tex. App.—Dallas 1978, no writ).
      Appellants are entirely correct that there is no evidence that Waldie expressed his desire to
dissolve the partnership on March 5, 1985; Waldie's expression of his desire to dissolve the
partnership though, has nothing to do with the jury's response to Question No. 1 which is
supported by a preponderance of the evidence. In determining when a "change in the relation"
of the partners occurred, the jury heard the testimony of Cross, Waldie, Durtschi, Margaret
Lopez, and Donna Bayer, to the effect that after December 1984, although the three partners were
not talking to each other as much as before, the partnership business was being carried on as usual. 
Appointments were being set, clients were being billed on partnership invoices, monies were being
collected and placed in the partnership account and no partner was ever excluded from the office. 
Other than office gossip that the partnership was going to split up, there was no evidence that there
was a change in relation between the partners until Cross had decided to physically move out of
the office on March 5, 1985.
      Based on the evidence presented to the jury and the instruction provided in connection with
Question No. 1, to which no objection was distinctly pointed out to the trial court, the jury's
finding of a March 5, 1985, dissolution date was proper and clearly supported by a preponderance
of the evidence. Accordingly, we overrule Appellants' points of error two and three.
      Appellants' points four and five assert there is no evidence and insufficient evidence to
support the jury's answer to Special Issue No. 2, that the plaintiffs exercised due diligence in
obtaining issuance and service of citation on Walter Waldie and Charles Durtschi. Appellants'
sixth point of error argues that the trial court erred in admitting the testimony of Robert R. Cole,
Jr. because Cole's testimony was subject to the automatic sanction of exclusion due to Cross's
failure to designate Cole as a person with knowledge of relevant facts.
      In the trial court Appellants urged the defense of limitations based on their theory that
dissolution of the partnership occurred no later than December 17, 1984. Although this action was
filed by Cross on December 6, 1988, within four years of accrual of his cause of action,
Appellants contend that Cross did not exercise due diligence in serving citation on Appellants until
fifty (50) days thereafter.
      After Appellees had rested their case, Appellants presented their case in chief. With respect
to the issues surrounding Appellants' limitations defense, there was evidence regarding when
Durtschi and Waldie were served with citations in this action. Appellants also called as a witness
Erlene Braziel, the civil process supervisor for the office of the Dallas County District Clerk, who
testified as to when the petition in this action was filed and when citations were issued. On cross-examination, Braziel testified that at the time of filing the petition, Cross paid all fees, including
the fee for issuance and service of the citations which were promptly prepared and delivered to
the constable the following day. After testimony of two additional witnesses, the defendants
rested. As a rebuttal witness, Appellees' counsel called Mr. Robert R. Cole, Jr. to testify. After
some preliminary examination, Appellants' counsel objected to the testimony of Cole on any issue
other than attorneys' fees for the stated reason that Cross had not designated Cole as a witness,
except as to the issue of attorneys' fees. Appellees' counsel responded that Cole had been
identified by Appellants as a witness having knowledge of the filing of Plaintiffs' Original Petition
and the instructions given to the constable or other officers regarding service in response to
interrogatories. The trial court took the matter under advisement and, upon recess, heard further
arguments from the parties. The trial court ultimately overruled Appellants' objection seeking to
exclude the testimony of Cole. The testimony given by Cole concerned exactly that which
Appellants had designated in their response to interrogatoires. Appellants assign as error the trial
court's admission of the testimony of Cole over their objections, arguing that the automatic
sanction of exclusion should have applied to Cole's testimony since he had not been identified by
Appellees in response to interrogatoires.
      A defendant who asserts the running of limitations as a bar to a cause of action, bears the
burden of showing that limitations barred the suit. Hansler v. Mainka, 807 S.W.2d 3, 5 (Tex.
App—Corpus Christi 1991, no writ); Delgato v. Burns, 656 S.W.2d 428, 429 (Tex. 1983);
Salazar v. Amigos Del Vale, Inc., 754 S.W.2d 410, 412 (Tex. App.—Corpus Christi 1988, no
writ). To sustain a judgment based on the grounds that the action was not served within the
applicable limitations period, the party asserting limitations must show that diligence was not used
to effectuate service. Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990); Martinez v. Vecerra,
797 S.W.2d 283, 284 (Tex. App.—Corpus Christi 1990, no writ).
      Accordingly, it was the Appellants who had the burden of proof in showing that diligence was
not used to effectuate service. This point has been clearly made by the Supreme Court of Texas
in Zale Corporation v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975). Once the requisite
showing has been made by the party asserting limitations and lack of diligence, the burden then
shifts to the plaintiff to explain the delay. Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826
(Tex. 1990); Nelson v. Schanzer, 788 S.W.2d 81, 86 (Tex. App.—Houston [14th Dist.] 1990, writ
denied).
      The rule requiring automatic exclusion of testimony from an undisclosed witness is subject
to a good cause exception. Tex. R. Civ. P. 215(5). Determination of good cause is within the
sound discretion of the trial court and will only be set aside if that discretion was abused. Morrow
v. H.E.B., Inc., 714 S.W.2d 297 (Tex. 1986). To determine if there is an abuse of discretion,
a reviewing court must look to see if the court acted without reference to any guiding rules and
principles. Morrow, 714 S.W.2d at 298.
      At the trial of this matter, there was no need whatsoever for Cross to call Cole as a witness
to testify regarding the diligence he used in effectuating service upon the Appellants until
Appellants had carried their burden of proof. Not knowing what evidence Appellants would offer,
if any at all, Appellees had no reason to call Cole as a witness until and when needed as a rebuttal
witness.
      The situation before the trial court below was not similar to the situation presented to the
Supreme Court in Alvarado v. Farah Manufacturing Company, Inc., 830 S.W.2d 911 (Tex. 1992). 
In Alvarado, the court held that the sanction of automatic exclusion could apply to a rebuttal
witness. The Supreme Court found in Alvarado that the "rebuttal witness" was clearly a potential
witness and that the party who sought to elicit testimony from such witness could just as well have
testified during that party's case in chief as in rebuttal. Alvarado, 830 S.W.2d at 916. The
Supreme Court held that the tactical decision prior to trial to call (the witness) on rebuttal was not
good cause for failing to comply with discovery. To hold otherwise would be to encourage the
very kind of gamesmanship that Rule 215(5) is intended to prevent. Alvarado, 830 S.W.2d at 916. 
Most interestingly, in a footnote, the Alvarado court noted as follows:
"The dissent argues that there was good cause to admit (the witnesses) testimony in
this case `because there was a need to call her as a rebuttal witness and because the
(opposing party) was not surprised by her testimony' . . . the effect of this reasoning is
to refuse to apply the supplementation rule to witnesses deferred to the rebuttal portion
of the case for purely tactical reasons. While there may be circumstances in which good
cause can be shown for admitting testimony of an undisclosed witness on rebuttal, as for
example when the need for the testimony could not reasonably have been anticipated,
such circumstances, not present in this case, hardly justify a pre-trial decision to save an
undisclosed witness for rebuttal."
Alvarado, 830 S.W.2d at 916, fn. 6 (emphasis added). Clearly, Appellants' call of Cole as a
rebuttal witness was not a tactical decision on Appellees' part to save Cole's testimony under the
guise of a rebuttal witness when Cole could have been called during Appellees' case in chief.
      In addition to the good cause exception to the automatic exclusion rule of Tex. R. Civ. P.
215(5), Texas courts have recognized other exceptions to the supplementation rule regarding fact
witnesses. It has been long established that the whole purpose of discovery is to allow the parties
"to obtain the fullest knowledge of issues and facts prior to trial." West v. Solito, 563 S.W.2d
240, 243 (Tex. 1978). The rules of discovery were changed to prevent trials by ambush and to
ensure that fairness would prevail. Gutierrez v. Dallas Independent School District, 729 S.W.2d
691, 693 (Tex. 1987).
      In Smith v. Christley, 755 S.W.2d 525 (Tex. App.—Houston [14th Dist.] 1988, writ denied),
the Houston Court of Appeals was confronted with an alleged error on a trial court's part in
allowing an attorney to testify regarding attorneys' fees who was not listed as an expert witness
in response to interrogatories. The interrogatory question in Smith was propounded by a third-party which eventually settled and the complaining party never asked for a list of expert witnesses. 
The court in Smith, held that:
"A party must be able to rely on the interrogatories and answers of other parties in
the same suit. Otherwise, a multi-party case would require redundant interrogatories
with identical questions and answers. Rule 168 already limits the number of
interrogatories. Although Rule 168(2) limits interrogatories to use against the answering
party, there is no such limit on who may use them."
Smith, 755 S.W.2d at 530 (emphasis supplied). Thus, the Smith court found that it was error in
admitting the testimony regarding attorneys' fees since the party should be able to rely on
previously propounded interrogatories from another party to the litigation. The holding in Smith
was approved by the Texas Supreme Court in Ticor Title Insurance Company v. Lacy, 803 S.W.2d
265 (Tex. 1991). Other intermediate courts have also approved the holding in Smith allowing a
party to offer and admit the testimony of a witness which that party had not designated in response
to interrogatory requests, but who was identified as a fact witness by another party to the action. 
See Ward v. O'Connor, 816 S.W.2d 446 (Tex. App.—San Antonio 1991, no writ); First Financial
Development Corp. v. Hughston, 797 S.W.2d 286 (Tex. App—Corpus Christi 1990, no writ).
      Accordingly, after careful consideration, the trial court properly allowed the testimony of Cole
who was strictly a rebuttal witness and who was identified in response to interrogatories
propounded in this multi-party action. The testimony clearly did not present an attempt to conduct
trial by ambush which the discovery rules have been tailored to avoid. Appellants' point of error
six is accordingly overruled.
      Considering the testimony of Cole, there is clearly sufficient evidence to support the jury's
finding of due diligence on the part of Appellees in serving citation on Appellants. Cole testified
regarding his hand-delivery of the Plaintiffs' Original Petition to the clerk of the court for filing
and his communication with the constable's office after there had been a delay in serving the
defendants. Cole also testified regarding his general practice in allowing the constable certain
leeway in attempting to serve defendants so as to lay the proper foundation for a motion for
substituted service under Tex. R. Civ. P. 106.
      Even assuming that the testimony of Cole should have been excluded, there was still sufficient
evidence before the jury for a finding of due diligence by Appellees in obtaining and serving
citation on Appellants. Erlene Braziel, the civil process supervisor for the District Clerk's office,
testified that at the time the petition was filed, Appellees had promptly paid not only the filing fee,
but also the fee for issuance of the citation and service of the citation. Ms. Braziel also testified
that once the citation leaves the office of the District Clerk, service of the citation is under the
control of the constable's office. From this evidence alone, the jury had sufficient evidence to
show the diligence of Appellees in effectuating service of the citation on Appellants. The
testimony of Cole was mostly cumulative of Braziel's testimony and any error in the admission
of Cole's testimony, if any there be, would constitute harmless error.
      By his seventh point of error Appellant asserts the trial court erred in entering a directed
verdict on Appellants' claims for recoupment because a counterclaim for recoupment is not subject
to the statute of limitations. We believe the trial court properly directed a verdict against
Appellants' claim for recoupment since the nature of this action which sought to ascertain
the value of Appellees' interests in a dissolved partnership necessarily considered all offsets and
credits due to Appellants. Appellants complain that the trial court erred in directing a verdict for
Appellees against Appellants' counterclaim for subrogation and contribution. For purposes of
appeal, Appellants now characterize their claim for subrogation and contribution as one for
recoupment, alleging that recoupment, as a matter of law, is not subject to limitations which was
the stated basis of Appellees' motion for instructed verdict.
      If Appellants' claim for subrogation and contribution is now to be characterized as a claim for
recoupment, a plea of recoupment is not subject to the statute of limitations. The trial court,
however, properly directed a verdict in favor of Appellees against Appellants' claim for
subrogation and contribution (now referred to as recoupment) since the very nature of the
proceeding before the trial court would necessarily take into consideration all claims, demands,
credits, and offsets due Waldie and Durtschi in accounting to Cross for his one-third interest in
the partnership. Indeed, this is the very nature of a suit involving an accounting. 
      Miller v. Howell, 234 S.W.2d 925 (Tex. App.—Fort Worth 1950, no writ) at page 930 says:
"When a partnership business is closed out, a cause of action for an accounting and
settlement arises between the partners, under an implied contract mutually and equally
to share the profits and bear the burdens of the partnership. The usual procedure for the
adjustment of partnership accounts is by a bill in equity. The settlement of the
partnership affairs, including the division of the assets among the partners, has always
been one of the functions of a court of equity."
      During the trial, the court and jury heard extensive evidence from the parties and their expert
witnesses regarding the assets and liabilities of the partnership. This was necessary for the court
and jury to arrive at a figure representing the amount due Appellees, taking into consideration the
assets and liabilities of the partnership. The theory of recoupment was intertwined within the
theory of this case and the trial court properly directed a verdict in Appellees' favor against
Appellants for subrogation and contribution. Therefore, Appellants' seventh point of error is
overruled.
      Appellants' eighth point of error contends that the trial court erred in granting a directed
verdict against Appellants' defense of mitigation because (Appellants say) the record contains
probative evidence supporting the submission of this issue to the jury. The Supreme Court in
Matthews v. DeSoto, 721 S.W.2d 286 (Tex. 1986), has foreclosed Appellants' argument in
connection with this point of error. Matthews holds that the trial court has no discretion to lessen
or increase the interest amount for delays caused by either party. We, therefore, overrule
Appellants' eighth point of error.
      Points of error nine, ten, and eleven by Appellants assert the trial court erred in awarding
damages derived from use of the partnership property because: (point nine) there was no
continuation of the partnership business; (point ten) there is no finding regarding what portion of
the partnership profits are directly attributable to Cross's capital investment; and (point eleven)
Cross did not elect to receive profits in lieu of interest under Article 6132b, section 42.
      We are of the opinion and hold that the trial court properly awarded appellees $49,333.33 as
actual damages under Appellees' claim for unjust enrichment.
      Appellants' points of error nine through eleven concern the propriety of the trial court's award
of one-third of the dollar amount found by the jury in response to Question No. 4. By their
response, the jury found that Waldie and Durtschi derived $148,000 in profits by renting out the
computer equipment to court reporters for their use and ultimately leasing the equipment to United
American Reporting for $91,000. Appellants' argument that the award of one-third of $148,000
was improper, is based on a technical application of Section 42 of the Texas Uniform Partnership
Act. Appellants' analysis under Section 42 of the Texas Uniform Partnership Act though, is
inappropriate and misplaced. Section 42 of the Texas Uniform Partnership Act provides that:
"When any partner retires or dies, and the business is continued under any of the
conditions set forth in Section 41(1),(2),(3),(5),(6) or Section 38(2)(b), without any
settlement of accounts as between him or his estate and the person or partnership
continuing the business, . . . he or his legal representative as against such persons or
partnership may have the value of his interest at the date of dissolution ascertained, and
shall receive as an ordinary creditor an amount equal to the value of his interest in the
dissolved partnership with interest, or, at his option, . . . the profits attributable to the
use of his right in the property of the dissolved partnership; . . . "
Tex. R. Civ. Stat. art. 6132b, § 42. As discussed above, there was no continuation of the
partnership business and Cross clearly did not die or retire from the partnership. The partnership
terminated and each party formed a new partnership. Waldie and Durtschi agreed to sell and/or
pay Cross one-third of the proceeds from any sale or the value of the dissolved partnership's
furniture and equipment, which included $65,500 worth of computer equipment. Contrary to their
agreement, obligation and duties, Waldie and Durtschi converted the equipment to their own use
and benefit and made a profit of $148,000 off the rental and lease of the computer equipment
without any accounting to Cross. One of Cross' causes of action in the trial court below was one
for unjust enrichment so as to disgorge Appellants from the profits they wrongfully derived to the
exclusion of Cross.
      This case was not tried on the theory that the partnership business continue; it was tried on
the theory that since Appellees were never paid any amounts for their ownership interest in the
equipment, equity should not allow Appellants to be unjustly enriched as a result of their breach
of agreement, duties and obligations to Appellees. Section 42 of the Texas Uniform Partnership
Act is simply not applicable to the facts of this case and the theory upon which it was tried.
      Section 5 of the Texas Uniform Partnership Act provides that "in any case not provided for
in this act, the rules of law and equity, including the law merchant, shall govern." Tex. R.Civ.
Stat., art. 6132b, § 5. Appellants seek to convince the court that Section 42 of the Texas
Uniform Partnership Act would control although it is clearly intended to apply to a situation totally
different than the one presented in the trial court. The settlement of partnership affairs, including
the division of the assets among the partners, has always been one of the functions of a court of
equity. Miller v. Howell, 234 S.W.2d 925, 930 (Tex. Civ. App.—Fort Worth 1950, no writ). 
Equity does not allow the imposition of a statute or legal rule to be used as an instrument to
accomplish injustice. Gillis v. Gillis, 435 S.W.2d 171, 174 (Tex. Civ. App.—Fort Worth 1968,
writ denied). Further, it is well established that equity seeks to prevent unjust enrichment. City
of Houston v. Howe & Wise, 373 S.W.2d 781, 789 (Tex. Civ. App.—Houston 1963, writ ref'd
n.r.e.).
      The jury found that as of March 5, 1985, the value of Cross' one-third interest in the
partnership was $63,759. Of that amount $21,833.33 represented the value of one-third of the
partnership's computer equipment at the date of dissolution. As part of the trial court's judgment,
it was determined that Cross was entitled to one-third of the value of the equipment as of the
dissolution date. Yet, Waldie and Durtschi failed to pay Cross the amount in breach of their
obligations and duty to Cross. Instead, they used the equipment to generate income by charging
court reporters for computer use time and ultimately leased the equipment to United American
Reporting earning $91,000 in lease payments, which Waldie and Durtschi retained. Not only did
Appellants wrongfully retain what was due to Appellee, they further made a profit of $148,000. 
Equity should not allow Waldie and Durtschi to retain the profits derived by them from renting
and leasing computer equipment for which they failed to account or settle with Cross.
      For the foregoing reason, we overrule Appellants' points of error nine, ten, and eleven. We
have carefully considered Appellants' points twelve through twenty-three and overrule all of same
as being without merit.
      Appellees assert two crosspoints, the first of which contends the trial court erred in overruling
Appellees' motion for partial judgment notwithstanding the verdict since the evidence regarding
Appellees' attorneys' fees was conclusive and Appellees were entitled to recover attorneys' fees
as requested as a matter of law. Since we grant Appellees' first crosspoint, it is not necessary for
us to deal with Appellees' second crosspoint.
      Appellees' counsel testified at trial as to the reasonable and necessary attorneys' fees incurred
and to be incurred by Appellees in connection with this action. Appellees' counsel testified that
the following would be reasonable and necessary attorneys' fees for the following:
                        Trial                                                                                    $48,000
                        Court of Appeals                                                                   $10,000
                        Application for writ of error                                                    $ 5,000
                        If application for writ of error is granted                                   $ 3,500
      During the course of this part of the proceedings, Appellants' counsel stated:
"I don't have any questions about your fee or the amount that you think a reasonable
fee would be in the event of an appeal."
      However, the jury found in answer to Special Issue No. 10 that a reasonable and necessary
attorney's fee for preparation and trial would be $24,000, and found "zero" for all remaining
amounts requested for appeal. Appellees then moved for partial judgment notwithstanding the
verdict and for partial new trial regarding the jury's findings as to attorneys' fees, both of which
the trial court overruled.
      A trial court may properly disregard jury findings and substitute his own if the evidence
conclusively established the issue. Ragsdale v. Progressive Voters League, 801 S.W.2d 880 (Tex.
1990) (where the testimony regarding attorneys' fees was uncontradicted); Clark v. Wagoner, 452
S.W.2d 437 (Tex. 1970).
      Accordingly, we overrule all of Appellants' points of error and affirm the trial court's
judgment in all respects except as concerns that portion of the judgment pertaining to attorneys'
fees. We grant Appellees' crosspoint one and reverse and render that portion of the trial court's
judgment to conform to the uncontradicted evidence; that is to say, Appellees are awarded $48,000
attorneys' fees for preparation and trial, $10,000 if the case is appealed to the court of appeals,
$5,000 if an application for writ of error is filed in the Supreme Court of Texas, and $3,500 if the
application for a writ of error is granted.
      The judgment is, therefore, affirmed in part, and reversed and rendered in part.
 
                                                                               JOHN A. JAMES, JR.
                                                                               Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Justice James (Retired)
Affirmed in part; reversed and rendered in part
Opinion delivered and filed February 22, 1995
Do not publish
[WITHDRAWN BY ORDER 8-30-95]